En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Miriam Vélez Miranda<br>     Demandante-recurrida<br><br>                v.<br><br>Servicios Legales de Puerto Rico, Inc.<br>     Demandados-recurrentes | Certiorari |

Número del Caso: TSPR-98-1

Abogados Parte Demandante: Lcdo. Antonio Cuevas Delgado
Lcdo. Rafael Cuevas Kuinlam
Cuevas Kuinlam & Bermúdez

Abogados Parte Demandada: Lcdo. Dixon Cancel Mercado

Abogados Parte Interventora:

Tribunal de Instancia: Superior de Mayaguez

Juez del Tribunal de Primera Instancia: Hon. Fernando L. Torres Ramírez

Tribunal de Circuito de Apelaciones:

Juez Ponente:

Fecha: 1/21/1998

Materia: Accion Civil, discrimen y represalias en el empleo.
Procedimientos Sumarios de Reclamaciones

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miriam L. Vélez Miranda

   Demandante-recurrida

    vs.                           CE-94-747     Certiorari

Servicios Legales de
Puerto Rico, Inc.

   Demandados-recurrentes

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RIO

San Juan, Puerto Rico, a 21 de enero de 1998.

El presente recurso plantea la cuestión de si una empleada que se querella de discrimen en el empleo por razón de haber informado a sus superiores sobre un incidente de hostigamiento sexual en el trabajo en que alegadamente se vio involucrado otro empleado, tiene que acogerse al procedimiento de arbitraje establecido en un convenio colectivo para formular su querella o puede recurrir directamente al foro judicial.

I

El 9 de agosto de 1993, la demandante-recurrida, Sra. Miriam L. Vélez Miranda (en adelante Sra.

Vélez) presentó una querella ante el Tribunal Superior, Sala de Mayagüez, bajo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 et seq., contra Servicios Legales de Puerto Rico, Inc., (en adelante Servicios Legales o la corporación) alegando que siendo empleada de dicha corporación en el Centro de Sabana Grande, presenció un incidente en que un abogado le imputó al Director de dicho Centro el haberlo hostigado sexualmente, y que en cumplimiento de su deber como empleada, notificó dicho incidente a un Oficial Administrativo de la corporación.[1]

Alega la Sra. Vélez que a partir de esa notificación, la gerencia de la corporación inició, propició y permitió que se efectuara un patrón de persecución y represalias contra ella. A consecuencia de estos actos la Sra. Vélez tuvo que acogerse a los beneficios del Fondo del Seguro del Estado. Como parte de las represalias se le negó también un acomodo razonable en otra oficina de Servicios Legales para su rehabilitación.

Según las disposiciones de la Ley Núm. 2, supra, el término para Servicios Legales contestar la querella vencía el 5 de octubre de 1993. El 1 de octubre de 1993, la querellada presentó una solicitud de prórroga, aduciendo como razones para solicitar la misma la enfermedad de la Directora Ejecutiva de la corporación y la necesidad de más tiempo para realizar un estudio detallado y así poder contestar responsablemente las alegaciones de la Sra. Vélez.

Por su parte, la Sra. Vélez se opuso a dicha prórroga, y solicitó se anotara la rebeldía. La Sra. Vélez sostuvo que las razones aludidas por Servicios Legales no justificaban la concesión de un término adicional para contestar la querella, y que dicha solicitud no cumplía con los requisitos de la Ley Núm. 2, supra, toda vez que la misma fue juramentada por el abogado de la querellada y no por la parte misma. Por su parte, Servicios Legales presentó su oposición a que se anotara la rebeldía.

---

[1] Se alegó en la querella, además, que el empleado afectado por el alegado hostigamiento sexual presentó una querella administrativa sobre el incidente el mismo día y presentó posteriormente una demanda judicial.

El 10 de noviembre de 1993, el tribunal de instancia aceptó la renuncia del abogado de Servicios Legales,[2] y a su vez le ordenó a dicha parte que procediera con la contestación a la querella una vez consiguiera nueva representación legal. A pesar de la orden emitida, la Sra. Vélez solicitó una aclaración del tribunal para que indicara si dicha orden equivalía a dictaminar no ha lugar a la solicitud de anotación de rebeldía. El tribunal no actuó en torno a dicha solicitud.

En cumplimiento de la orden dictada, Servicios Legales presentó su contestación a la querella el 30 de noviembre de 1993, dentro del término concedido. Alegó, entre otras defensas, que el tribunal de instancia carecía                                                                de

---

[2]En dicha orden el foro de instancia le concedió un término de quince (15) días a esta parte para conseguir nueva representación legal.

jurisdicción para entender en la reclamación, toda vez que la querellante era miembro de la Unión Independiente de Trabajadores de Servicios Legales, la cual tenía con la querellada un convenio colectivo durante el período de la querella. Sostuvo que dicho convenio establecía las condiciones de trabajo y en especial, un procedimiento de quejas y agravios, incluyendo arbitraje, que cubría esta situación y no había sido utilizado por la querellante. Basada en dicha defensa afirmativa, la querellada presentó una "Moción de Desestimación por Falta de Jurisdicción" el 28 de diciembre de 1993.

Ante dicha contestación, la Sra. Vélez volvió a presentar su solicitud de anotación de rebeldía el 30 de diciembre de 1993. Servicios Legales replicó y la Sra. Vélez presentó dúplica a la cual contestó Servicios Legales. Así las cosas, el 19 de mayo de 1994, el foro de instancia emitió una resolución notificada el 24 de mayo de 1994, declarando no ha lugar la solicitud de anotación de rebeldía y ordenando continuar con los procedimientos establecidos en la ley. En esa misma fecha, el tribunal de instancia dictó una segunda resolución mediante la cual le concedió término a la querellante para mostrar causa por la cual no debiera decretarse la desestimación de la querella a la luz de la moción de desestimación, y le concedió término a la querellada para que sometiera copia del convenio colectivo y elaborara sus planteamientos en dicha moción a la luz del reclamo de la querellante a indemnización monetaria. Ante tales resoluciones, la querellada presentó moción en cumplimiento de orden el 31 de mayo de 1994. En esa misma fecha, la Sra. Vélez presentó una moción de reconsideración del dictamen que denegó la anotación de rebeldía el 3 de junio de 1994, y presentó su moción mostrando causa. La querellada presentó su oposición a la moción de reconsideración el 10 de junio de 1994 y en la misma fecha replicó a la mostración de causa de la querellante.

No habiendo el tribunal acogido ni resuelto dicha moción de reconsideración, la parte promovente la dio por rechazada de plano una vez transcurridos diez (10) días, según la Regla 47 de Procedimiento

Civil, 32 L.P.R.A. Ap. III, R. 47. Ante tales circunstancias, la querellante procedió a radicar una petición de certiorari ante nos, aduciendo que incidió el tribunal de instancia al conceder la prórroga y solicitando como remedio que se ordenase la anotación de rebeldía contra la querellada. Dicha solicitud fue declarada no ha lugar por este Tribunal mediante Resolución fechada 1ro de septiembre de 1994, en la que se confirmó la denegatoria del tribunal de instancia a anotar la rebeldía.[3]

Posteriormente, el 19 de septiembre de 1994, el Tribunal Superior, Sala de Mayagüez, notificó a las partes una Resolución dictada el 5 de julio de 1994, en la que ordenó anotar la rebeldía de Servicios Legales; declaró sin lugar la moción de desestimación instada por ésta y señaló vista en su fondo para recibir prueba de los daños alegados.[4]

Inconforme con esta segunda resolución, Servicios Legales acude ante nos planteando lo siguiente:

**A:** **INCIDIO EL HONORABLE TRIBUNAL SUPERIOR, SALA DE MAYAGÜEZ, AL ANOTAR LA REBELDIA A LA PARTE QUERELLADA VIOLENTANDO ASI LA POLITICA PUBLICA ESTABLECIDA POR ESTE HONORABLE TRIBUNAL DE QUE LOS CASOS SE VEAN EN SUS MERITOS.**

**B:** **INCIDIO EL HONORABLE TRIBUNAL SUPERIOR, SALA DE MAYAGÜEZ, AL NO DARLE EL MAS ALTO GRADO DE OBLIGATORIEDAD A LAS CLAUSULAS DE UN CONVENIO COLECTIVO, INTERVINIENDO ASI CON EL BALANCE QUE CREA LA PAZ LABORAL.**

II

En su primer señalamiento de error, Servicios Legales plantea que el tribunal de instancia abusó de su discreción al no concederle la prórroga solicitada debido a que dicha solicitud no estaba debidamente juramentada por la parte. Como indicamos anteriormente, este Foro resolvió esa misma controversia entre las partes mediante Resolución de 1ro. de septiembre

---

[3]Miriam L. Vélez Miranda v. Servicios Legales de Puerto Rico, CE-94-454.

[4]Dicha resolución fue emitida en respuesta a la moción de reconsideración radicada el 3 de junio de 1994 por la querellante. Además, expresa la querellada que debido al atraso en la notificación, dicha resolución no pudo ser comunicada previo a que este Foro confirmara la denegatoria de la anotación de rebeldía.

de 1994 en el caso CE-94-454. En dicha Resolución, expresamos que:

> "[...] La querellada presentó su solicitud de prórroga dentro del término original para contestar la querella. En la misma adujo una serie de razones que justificaban la prórroga solicitada. No vemos cómo puede afectarse la querellante por el
>
> hecho de que la prórroga haya sido juramentada por el abogado y no por la querellada."

En <u>Sánchez Rodríguez v. López Jiménez</u>, 118 D.P.R. 701, 704 (1987), expresamos:

> "No nos corresponde en esta etapa reexaminar nuevamente aquellos planteamientos de las partes que con anterioridad fueron adjudicados por el foro de instancia y este Tribunal. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la <u>Ley del Caso</u>. No pueden revisarse. <u>Candelaria v. Mun. De Ceiba</u>, 114 D.P.R. 155, 156-157 (1983); <u>Rivera v. Insurance Co. of P.R.</u>, 103 D.P.R. 91, 94 (1974); <u>Don Quixote Hotel v. Tribunal Superior</u>, 100 D.P.R. 19, 29-30 (1971); <u>Srio. del Trabajo v. Tribunal Superior</u>, 95 D.P.R. 136, 140 (1967); <u>Martínez v. Tribunal de Distrito</u>, 69 D.P.R. 552, 555 (1949)."

Resulta improcedente, por tanto, considerar y discutir nuevamente la cuestión planteada en el primer señalamiento de error. Ciertamente, erró el Tribunal de instancia al no conceder la prórroga solicitada y ordenar la anotación de la rebeldía a la querella, en contravención a lo anteriormente adjudicado por este Tribunal.

### III

En su segundo señalamiento de error, Servicios Legales plantea, en síntesis, que incidió el tribunal de instancia al concluir que el caso de autos es uno basado en hostigamiento sexual, por lo que entendió que poseía jurisdicción para entender en el pleito cuando en realidad existía un convenio colectivo que establecía que dicha reclamación sería arbitrable. Servicios Legales fundamenta su posición citando el Artículo 7, Sección 1, y el Artículo 10 del Convenio Colectivo a los efectos de intentar persuadirnos que la Sra. Vélez debió agotar los procedimientos de arbitraje establecidos en el mismo.

El Artículo 7, Sección 1 del Convenio Colectivo, dispone lo siguiente en la parte pertinente:

"Todas las controversias, disputas, quejas y querellas basadas en la aplicación o interpretación de las disposiciones de este Convenio serán de la competencia de los organismos creados en este Artículo y de los organismos creados por ley, una vez agotado el procedimiento establecido en este Artículo."

El Artículo 7, Sección 5 del referido convenio dispone lo siguiente:

De no llegarse a un acuerdo, el querellante podrá someter el caso ante un Arbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos dentro de los cinco (5) días laborables siguientes a la fecha en que la parte querellante reciba copia escrita de la decisión de la parte querellada.

El Artículo 7, Sección 7 B, a su vez, dispone lo siguiente:

El Arbitro tendrá jurisdicción exclusiva para considerar y resolver toda controversia o asunto que no haya sido resuelto por los representantes de las partes, de conformidad con las secciones precedentes, y tendrá jurisdicción original para considerar y resolver cualquier controversia o asunto que cualquiera de las partes considere no es susceptible de resolución por dichos representantes. Además, tendrá jurisdicción exclusiva para considerar toda controversia, disputa, queja o querella que surja en la aplicación o interpretación de las disposiciones de este Convenio u otros asuntos que surjan del mismo.

El Artículo 10 del mencionado Convenio Colectivo en su parte pertinente dispone lo siguiente:

"PROHIBICION DE DISCRIMEN

La Corporación no discriminará por razón de credo, religión, raza, color, sexo, orientación sexual, origen nacional, edad, impedimento físico o mental, conforme a lo dispuesto en las leyes aplicables, estado civil, afiliación política u orientación sindical contra un solicitante o trabajador a la Corporación"

Este Tribunal no ha titubeado en determinar que las partes deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa. Pagán v. Fundación Hospital Dr. Pila, 114 D.P.R. 224, (1983). Ello responde a varias razones, tanto del derecho de obligaciones y contratos, como de orden público.

Primeramente, el convenio colectivo es un contrato que tiene fuerza de ley entre las partes. Junta de Relaciones del Trabajo v. Junta de Administración del Muelle del Municipio de Ponce, 122 D.P.R. 318 (1988). El compromiso allí consagrado de someter a ambas partes por igual al

procedimiento de arbitraje debe ser observado siempre antes de presentar la controversia ante el foro judicial. Segundo, el arbitraje es parte integrante del procedimiento de negociación colectiva. Es el mecanismo que las partes han escogido como idóneo para la resolución de sus disputas. Además, constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible, y menos oneroso. Pérez v. Autoridad de Fuentes Fluviales, 87 D.P.R. 118 (1963). Por todo lo anterior, en Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero patronal.

Tomando en cuenta la voluntad de las partes al firmar el convenio colectivo, resulta ineludible concluir que ambas partes aceptaron someter sus quejas y agravios ante un árbitro del Negociado de Conciliación y Arbitraje del Dpto. del Trabajo y Recursos Humanos. (en adelante Negociado).

Por su parte, el Secretario del Trabajo y Recursos Humanos, en virtud de las facultades que le confirió la Sección 4 de la Ley Núm. 15 de 14 de abril de 1931, según enmendada, 3 L.P.R.A. 304, et seq. promulgó el Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico, (en adelante Reglamento) para gobernar el orden interno del servicio de arbitraje que ofrece el Negociado.

Dicho Reglamento tiene el propósito de promover el arbitraje voluntario de las controversias obreropatronales bajo aquellos convenios colectivos o acuerdos en que se autorice al Negociado a designar un árbitro. Como parte de tal reglamentación, se establecieron ciertas circunstancias en las cuales aún existiendo un acuerdo entre las partes, el Negociado no ofrecería sus servicios de arbitraje.

El Artículo 3, inciso (d) del Reglamento dispone lo siguiente:

> Los casos por discriminación cubiertos por las disposiciones de la Ley 100 de 30 de junio de 1959, según enmendada, y/o por el título VII de la Ley Federal de Derechos Civiles de 1964, según enmendada, no se ventilarán ante los árbitros del Negociado. Las partes podrán tramitar estos casos

siguiendo el procedimiento que a esos efectos apruebe el Secretario del Trabajo y Recursos Humanos o ante los foros administrativos o judiciales pertinentes. (Subrayado nuestro)

En Puerto Rico el discrimen por razón de sexo está prohibido expresamente en nuestra Constitución. Art. II, Sec. 1.[5] La Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 146 et seq., recogió dichos preceptos constitucionales en el ámbito obrero-patronal. Dicha ley prohíbe el discrimen en el empleo por razón de edad, raza, color, sexo, origen social o nacional, condición social, e ideas políticas o religiosas.

Conscientes de que esta ley no prohibía expresamente el hostigamiento sexual, la Legislatura aprobó la Ley Núm. 17 del 22 de abril de 1988, 29 L.P.R.A. sec. 155. A estos efectos se "[...] declara como política pública del Estado Libre Asociado que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable."[6] Resulta evidente que la Ley Núm. 17, supra, persigue el mismo propósito que la Ley Núm. 100, supra. Por lo tanto, vemos que por virtud del mismo Reglamento del

Negociado, éste impide que sus árbitros entren a conocer en la presente controversia. Además, al analizar la Ley Núm. 17, supra, y su historial legislativo, resolvemos que la Sra. Vélez no estaba obligada a agotar los procedimientos de arbitraje establecidos en el convenio colectivo. Veamos.

La Ley Núm. 17, supra, en su Artículo 5, responsabiliza al patrono tanto por sus actos de hostigamiento como por los de sus supervisores o

---

[5]Reza dicho Artículo de nuestra Constitución:

La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana.

[6]29 L.P.R.A. sec. 155.

agentes, independientemente de si la actuación que originó la reclamación fue autorizada o prohibida por el patrono.[7] Además, el Artículo 9 de la Ley responsabiliza al patrono cuando éste:

> "[...] realice cualquier acto que tenga el resultado de afectar adversamente las oportunidades, términos y condiciones del empleo de cualquier persona que se haya opuesto a las prácticas del patrono que sean contrarias a las disposiciones de esta ley, o que haya radicado una querella o demanda, haya testificado, colaborado, o de cualquier manera haya participado en una investigación, procedimiento o vista que se inste al amparo de esta ley."[8] (Subrayado nuestro).

A estos efectos, el Artículo 13 de la citada ley señala que "a los fines de iniciar los procedimientos judiciales bajo esta ley no será necesario agotar los remedios administrativos."[9] (Subrayado nuestro).

Resulta ilustrativo el Informe Conjunto de la Cámara de Representantes del 23 de marzo de 1988 sobre el P. del S. 1437 al aclarar el alcance del Artículo 13 de esta ley, el cual expresa a las páginas 8 y 9:

> "El remedio provisto por esta ley es sólo exigible a través del procedimiento judicial y por ello el Artículo 13 establece que no se requerirá agotar los remedios administrativos provistos en otras leyes, como tampoco hay que hacerlo bajo las citadas leyes 100 y 69. Es la intención de esta medida que el empleado afectado por un acto de hostigamiento sexual no se vea obligado a acudir a ningún foro administrativo antes de recurrir al foro judicial civil; ni del Estado, ni del patrono, ni el que pudiera establecerse en virtud de convenio. En esto último concuerda con lo resuelto por el Tribunal Supremo de los Estados Unidos en el caso de Alexander v. Gardner-Denver, 415 U.S. 36 (1974)." (Subrayado nuestro)

En Alexander v. Gardner-Denver Co., supra, el Tribunal Supremo de los Estados Unidos determinó que el derecho estatutario de un empleado a solicitar un juicio de novo bajo el título VII de la Ley de Derechos Civiles de 1964, no está limitado por una sumisión previa de la causa de acción de dicho empleado ante un árbitro bajo una cláusula antidiscrimen en un convenio colectivo.

---

[7]29 L.P.R.A. sec. 155 d.

[8]29 L.P.R.A. sec. 155 h.

[9]29 L.P.R.A. sec. 155 l.

Posteriormente, en Barrentine v. Arkansas Best Freight Systems, 450 U.S. 728 (1981), se expandió el principio sentado en Alexander v. Gardner-Denver Co., supra, a los efectos de que cuando la causa de acción de un obrero no se deriva de un convenio colectivo, sino de un estatuto diseñado para proveerle garantías a los trabajadores individuales, se puede hacer caso omiso del procedimiento de arbitraje y acudir a los tribunales para un juicio de novo.

En Pagán v. Fundación Hospital Dr. Pila, supra, rechazamos el argumento de Barrentine, supra, al efecto de que las controversias laborales fundadas en la Constitución o las leyes pueden ser ventiladas directamente ante los tribunales, sin antes acudir al procedimiento pactado en los convenios. De aceptar el principio de Barrentine, supra, concluimos que le estaríamos asestando un golpe de muerte al arbitraje laboral en Puerto Rico, e inundaríamos nuestro sistema judicial de litigios que pueden resolverse más rápidamente y en modo no menos justo por procedimientos más flexibles. Id., a la pág. 234.

El presente caso se distingue de la situación que se nos presentó en el caso de Pagán, supra, ya que la intención del legislador al promulgar la Ley Núm. 17, supra, es clara al establecer que el empleado afectado por un acto de hostigamiento sexual no se vea obligado a acudir a ningún foro administrativo antes de recurrir al foro judicial civil; ni del Estado, ni del patrono, ni del que pudiera establecerse en virtud de convenio.

Reconocemos, como norma general, la política pública a favor de arbitraje que emana de un convenio entre las partes. Buena Vista Dairy v. J.R.T., 94 D.P.R. 624, 632 (1967). No obstante, existen excepciones al mismo, siendo esta una por expreso mandato legislativo.

Por los fundamentos que anteceden, se confirma la Resolución del Tribunal Superior, Sala de Mayagüez, del 5 de julio de 1994 al declarar sin lugar la moción de desestimación por falta de jurisdicción presentada por Servicios Legales y se revoca la misma en cuanto a la anotación de rebeldía, dejándose sin efecto la rebeldía anotada. Se ordena la

continuación de los procedimientos ante el tribunal de instancia de conformidad con lo aquí resuelto.


                         BALTASAR CORRADA DEL RIO
                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miriam L. Vélez Miranda

    Demandante-recurrida

      vs.                    CE-94-747     Certiorari

Servicios Legales de
Puerto Rico, Inc.

    Demandados-recurrentes

## SENTENCIA

San Juan, Puerto Rico, a 21 de enero de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, confirmamos la Resolución del Tribunal Superior, Sala de Mayagüez, de 5 de julio de 1994, declarando sin lugar la moción de desestimación por falta de jurisdicción presentada por Servicios Legales y se revoca la misma en cuanto a la anotación de rebeldía.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente con opinión, a la cual se une la Juez Asociada señora Naveira de Rodón. El Juez Asociado señor Negrón García inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

**Error! Reference source not found.**

MIRIAM L. VELEZ MIRANDA

    Demandante-Recurrida

        vs.               CE-94-747      CERTIORARI

SERVICIOS LEGALES DE PUERTO
RICO, INC.

    Demandados-Recurrentes

CE-94-747

Opinión Disidente emitida por el Juez Asociado Señor FUSTER BERLINGERI, a la cual se une la Juez Asociada señora NAVEIRA DE RODON.

En San Juan, Puerto Rico, a 21 de enero de 1998.

No estoy de acuerdo con la decisión de la mayoría de que en este caso no procedía someter a arbitraje la querella laboral en cuestión. Por ello disiento de la parte correspondiente de su dictamen.

Según la mayoría, en el caso de autos no procedía someter a arbitraje la querella laboral en cuestión, porque supuestamente la Ley Núm. 17 de 22 de abril de 1988, así lo establece. Sin embargo, todo lo que dispone esa ley, respecto a lo que aquí nos concierne, es que a los fines de iniciar procedimientos judiciales a su amparo, "no será necesario agotar los remedios administrativos". (Enfasis suplido). Me parece que esa escueta disposición legislativa no es suficiente para hacer inaplicable en casos como el de autos la imperiosa política pública que prevalece en Puerto Rico, a favor

del arbitraje como medio alterno para la solución de disputas, sobre todo las de índole laboral.

Un laudo arbitral, que se origina en lo pactado en un convenio colectivo, no es esencialmente un "remedio administrativo". En su sentido jurídico propio, el concepto de "agotar remedios administrativos" se refiere a procurar los recursos que por ley proveen aquellos organismos públicos que se conocen comúnmente como "agencias administrativas". Tales organismos, están definidos en la Ley de Procedimiento Administrativo Uniforme de Puerto Rico, 3 L.P.R.A. sec. 2102. El proceso de arbitraje acordado en un convenio colectivo no es uno de éstos. Por ello, es cuando menos cuestionable, que la disposición referida de la Ley 17 sea aplicable a este caso.

La mayoría se apoya en un mero informe legislativo para llegar a la conclusión que la Ley 17 precluye aquí el proceso de arbitraje. Tal interpretación, sin embargo, también es cuestionable. En el informe en cuestión no se explica que uno de los propósitos de la legislación aludida es hacer una excepción a la bien establecida política pública sobre el arbitraje laboral. El asunto ni se menciona. Lo que el informe aludido muy escuetamente indica sobre el particular, además, es algo confuso, ya que "en virtud de convenio" no puede establecerse "ningún foro administrativo". Más aun, lo único que así equívocamente se indica, está también expresamente condicionado a lo resuelto por el Tribunal Supremo de Estados Unidos en Alexander v. Gardner-Denver, 415 U.S. 36 (1974). En ese caso no se resolvió que en situaciones como la de autos no procede el arbitraje. En éste, el empleado querellante tenía dos remedios diferentes disponibles: uno provisto por el convenio colectivo, y otro de alcance distinto provisto por ley. Lo que el Supremo federal dictaminó allí fue que el proceso de arbitraje no excluía el proceso judicial; es decir, que el querellante podía acudir a ambos. Incluso resolvió que en el proceso judicial se podía tomar en cuenta el laudo arbitral, y dársele el peso probatorio que ameritase. Es evidente que la situación en el caso de autos, no es igual ni similar a la del caso de Alexander v. Gardner-Denver. Por ello, no se puede, del informe legislativo que adopta lo que se resolvió en dicho caso federal, llegar a la conclusión de que en el de autos queda excluido el proceso de arbitraje.

En resumen, pues, para resolver que por ley se le ha hecho una excepción a la importantísima política pública de Puerto Rico a favor del arbitraje laboral, es necesario que tal excepción conste claramente. Tal no es el caso aquí. Ni la Ley 17 ni el informe legislativo al que alude la mayoría, establecen tal excepción de modo palmario. Cualquier duda o ambigüedad tiene que resolverse a favor del arbitraje. Como la mayoría decreta de otro modo, disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO