# 2003 DTA 120

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL II**

DEPARTAMENTO DE RECURSOS NATURALES DE PUERTO RICO
Recurrente

v.

SERVIDORES PUBLICOS UNIDOS (AFSCME) UNION DEL
CUERPO DE VIGILANTES DEL DRNA
Recurrida

Núm. KLRA-2003-00091

San Juan, Puerto Rico, a 29 de julio de 2003

Panel compuesto por su Presidenta, la Juez Rodríguez de Oronoz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Peñagarícano Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Departamento de Recursos Naturales y Ambientales, (en adelante, el Departamento) recurre ante nos mediante auto de Revisión presentado el 14 de febrero de 2003. Solicita revisemos la Decisión y Orden emitida y notificada el 15 de enero de 2003, por la Comisión de Relaciones del Trabajo para el Servidor Público (en adelante, la Comisión). Mediante la aludida Decisión, la Comisión ordenó el ascenso de dos empleados del Departamento conforme un acuerdo suscrito en plena veda electoral.

Habiendo analizado los escritos presentados por las partes, y a la luz del derecho aplicable, dictaminamos revocar la *Decisión y Orden* de autos. Veamos.

**I**

El Departamento de Recursos Naturales y Ambientales de Puerto Rico (en adelante, el Departamento), ascendió a un grupo de vigilantes al puesto de sargento durante el año 2000. Los vigilantes, Julio A. Pedraza Ayala y Angel L. Cruz Acevedo (en adelante, vigilantes) no fueron ascendidos. Inconformes, iniciaron un proceso de quejas y agravios contra el Departamento de acuerdo al Convenio Colectivo vigente. El 13 de septiembre de 2000, se llevó a cabo una reunión en la oficina del Comisionado del Cuerpo de Vigilantes. En ésta participaron el Coronel Félix Salas Quiñonez, el Teniente Coronel Julio Aulet Rivera, el Capitán Saúl Zapata, el Teniente Rafael Otero, el Vigilante Ángel Cruz Acevedo y el Vigilante Allen Ramos. En la reunión, se discutió la solicitud de los vigilantes, al puesto de sargentos; ello sin oposición.

El 12 de diciembre de 2000, se llegó a un acuerdo concediendo los ascensos a los vigilantes con efectividad del 8 de enero de 2001. El 3 de agosto de 2001, la Unión del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales (en adelante, la Unión), presentó un cargo de práctica ilícita contra el Departamento. En ésta imputó violaciones a las secciones 9.1 (c) (d) de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 del 25 de febrero de 1998. 3 L.P.R.A. sec. 1451, *et seq*. El 16 de enero de 2002, la Comisión emitió una querella en contra del Departamento y señaló una vista administrativa para el 15 de febrero de 2002.

Así las cosas, el 15 de febrero de 2002, previo a llevarse a cabo la vista señalada para ese día, las partes acordaron mediante estipulación, que el Departamento tomaría los pasos necesarios para cumplir con el acuerdo del 12 de diciembre de 2000. ■ Lo anterior, se haría con efectividad del 22 de febrero de 2002. El 12 de abril de 2002, el Departamento rehusó cumplir con la estipulación del 15 de febrero de 2002, aduciendo que había encontrado una minuta referente a la reunión efectuada el 13 de septiembre de 2000, por la cual se probaba que tanto el acuerdo de ascenso de 12 de diciembre de 2000 así como la estipulación que ratificó el mismo eran contrarios a la veda electoral.

El 20 de agosto de 2002, se notificó el *Informe y Recomendaciones de la Oficial Examinadora* de la Comisión. Este *Informe* recomendó que el Departamento ascendiera a los vigilantes querellantes de conformidad con el acuerdo del 12 de diciembre de 2000, y que el mismo fuera retroactivo al 8 de enero de 2001. ■ El 3 de septiembre de 2002, el Departamento presentó un escrito de *Excepciones a Informe y Recomendaciones de la Oficial Examinadora Incorporando Memorando de Derecho*.

El 15 de enero de 2003, la Comisión emitió su Decisión y Orden validando el acuerdo de ascenso a los vigilantes en cuestión. Además, encontró al Departamento incurso en práctica ilícita. El 14 de febrero de 2003, el Departamento recurre ante nos mediante escrito de revisión administrativa indicando la comisión de los siguientes señalamientos de error:

*"A. Erró la Comisión de Relaciones del Trabajo al resolver que el acuerdo llegado por las partes el 12 de diciembre de 2000, en el Comité de Conciliación, era uno válido a pesar de haber sido efectuado en plena veda electoral.*

*B. Erró la Comisión de Relaciones del Trabajo al resolver que una estipulación suscrita por las partes el 15 de febrero de 2002, para poner en vigor un acuerdo nulo, se impone sobre el acuerdo sustantivo que es nulo radicalmente por haber sido acordado durante la veda electoral.*

*C. Erró la Comisión de Relaciones del Trabajo al resolver que procede el ascenso sin oposición de dos vigilantes a los puestos de sargentos sin evidencia alguna de las circunstancias especiales requeridas en ley por*

*el mero hecho de que el anterior representante del Departamento de Recursos Naturales hubiera llegado a un acuerdo nulo en la veda electoral para que se reclasificaran.*

*D. Erró la Comisión de Relaciones del Trabajo al ordenar la reclasificación a sargento de los dos vigilantes querellantes en violación al principio de mérito, sin oposición.*

*E. Erró la Comisión al validar un Convenio Colectivo que viola el principio de mérito."*

El 12 de marzo de 2003, concedimos a la parte recurrida, la Unión, el término de treinta (30) días para fijar su posición en torno al recurso presentado. El 17 de abril de 2003, la Unión solicitó término adicional para presentar su escrito. El 29 de abril de 2003, concedimos el término solicitado. El 22 de mayo de 2003, la Unión presentó su *Alegato* en torno al recurso instado. Asimismo, el 4 de junio de 2003, el Departamento presentó su *Réplica a Alegato de la Parte Peticionada* (*sic*).

**II**

La Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, dispone que la política pública será el *"[e]stablecer el mérito como el principio que regirá todo el servicio público, de modo que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito y a la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas."* 3 L.P.R.A. sec. 1311. Véase además: *Rodríguez Román v. Banco Gubernamental de Fomento para Puerto Rico,* **2000 J.T.S. 104**; *Cintrón Santana v. Superintendente de la Policía de P.R.,* 131 D.P.R. 1 (1992).

Así, pues, la citada legislación tiene como propósito cardinal el que el mérito sea el criterio rector al momento de, entre otras cosas, seleccionar, reclutar, ascender o descender los empleados del servicio público. *Martínez Conde v. Departamento de Educación,* 148 D.P.R. 648; *Reyes Coreano v. Director Ejecutivo,* 110 D.P.R. 40 (1980). Asimismo, como derivado de este principio de mérito, el gobierno tiene la obligación de asegurar a la ciudadanía en general, la oportunidad de poder competir en igualdad de condiciones para obtener empleo en el sector público. *Torres Ramos v. Policía de P.R.,* 143 D.P.R. 783 (1997); *Díaz González v. Tribunal Superior,* 102 D.P.R. 195 (1974).

Asimismo, la Ley de Personal, *supra*, estipula lo siguiente:

*"A los fines de asegurar la fiel aplicación de mérito en el servicio público durante períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleados.*

*Esta prohibición comprenderá el período de dos (2) meses antes y dos (2) meses después de la celebración de las Elecciones Generales en Puerto Rico....*

*Se podrá hacer excepción de esta prohibición por necesidades urgentes del servicio, previa la aprobación del Director, conforme a las normas que se establezcan mediante el reglamento."* Bastardillas nuestras. 3 L.P.R.A. sec. 1337.

El Tribunal Supremo de Puerto Rico ha señalado respecto a la prohibición contenida en la citada sección que la misma, *"...es salvaguarda por excelencia del principio de mérito que rige el servicio público, detente legislado para los cuatro meses en que por llegar a máxima efervescencia las pasiones políticas, pueden las flaquezas humanas traducidas a bondad para los partidarios o represalia contra el adversario, determinar cambios en el personal extraños y opuestos al fundamental principio..."*. (Escolio omitidos) *Ortiz v. Alcalde de Aguadilla,* 107

D.P.R. 819 (1978), a la pág. 824; *Reyes Coreano v. Director Ejecutivo,* 110 D.P.R. 40 (1980).

Por designio legislativo, la Ley de Personal, *supra,* no ha de aplicar, entre otros, a aquellas agencias o instrumentalidades que funcionen como empresas y aquellos que tienen derecho a negociar colectivamente mediante leyes especiales. 3 L.P.R.A. sec. 1338. No obstante lo anterior, las agencias excluidas están compelidas a adoptar un reglamento de personal que incorpore el principio de mérito, el cual habrá de regir las normas de personal de los empleados que no estén cubiertos por convenios colectivos. *Ibid. Torres Ponce v. Jiménez,* 113 D. P.R. 58 (1982).

Predicado en ello, el *Reglamento de Personal de Carrera del Departamento de Recursos Naturales y Ambientales,* estipula en su Artículo 16 lo siguiente, a saber: ▓

*"A los fines de asegurar la fiel aplicación del principio de mérito en el servicio público durante período pre y post eleccionarios, el Secretario se abstendrá de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleados.*

*Esta prohibición comprenderá el período de dos (2) meses antes y dos (2) meses después de la celebración de las Elecciones Generales de Puerto Rico.*

*Se podrá hacer excepción de aquellas transacciones de personal que el abstenerse de efectuarlas afectaría adversamente las necesidades del servicio. También podrá hacerse excepción de las áreas señaladas en el Artículo 11 del Reglamento de Personal: Areas Esenciales al Principio de Mérito.*

*Será responsabilidad del Secretario en aquellos casos necesarios, solicitar del Administrador que se exceptúen de la prohibición. La solicitud deberá indicar los efectos adversos que han de evitarse mediante la excepción."* ▓ Bastardillas nuestras.

Habida cuenta de ello, el 30 de junio de 2000, el Departamento y la Unión suscribieron un Convenio Colectivo (en adelante, Convenio). El mismo, expone en su Artículo VIII lo siguiente, a saber:

*"DISPOSICIONES RELACIONADAS CON EL PRINCIPIO DE MERITO*

*Sección 1: Las partes reconocen que el Departamento de Recursos Naturales y Ambientales y el Gobierno de Puerto Rico han promulgado leyes, órdenes administrativas, normas, reglamentos y memorandos en las que se establecen los procedimientos y toda la normativa relacionadas con el reclutamiento, nombramiento, selección, clasificación, adiestramiento, traslados y ascensos. También reconocen que, conforme las disposiciones de la Sección 5.1 de la Ley, no serán negociables las áreas esenciales del Principio de Mérito."* ▓

Por su parte, el Artículo IX del Convenio enuncia en lo pertinente:

*"Los empleados de esta Unidad podrán ser ascendidos, según las disposiciones de la sección 7.1 del Reglamento de Personal para los Empleados de Carrera del Departamento de Recursos Naturales y Ambientales.* ▓

*Sección 1: OBJETIVOS DE LOS ASCENSOS*

*El objetivo de los ascensos es atraer al mejor personal para cubrir puestos públicos, ofrecer oportunidades para mayor progreso de sus servidores, según se desarrollan sus capacidades para prestar buenos servicios, mantener un alto nivel de satisfacción y ejecución entre los empleados y lograr retener en el servicio a los más*

*capacitados.*

### Sección 2: NORMAS SOBRE ASCENSO

*Con el fin de establecer sistemas que hagan viable el ascenso de los empleados de carrera, regirán las siguientes normas:*

*a) ...*

*b) ...*

*c) Los ascensos se efectuarán a través de procesos de competencia circunscritos a empleados de carrera con status probatorio o regular. Los empleados también podrán ascender como resultado de haber participado en procesos de libre competencia conjuntamente con candidatos cualificados e interesados. En ambos casos, el candidato seleccionado deberá escogerse mediante certificación de lista de elegibles.*

*d) ...*

*e) ...".* ■

Asimismo, en el Convenio se detalló la forma en que puede producirse un ascenso sin oposición:

*"Sección 3: ASCENSOS SIN OPOSICION*

*a) Se podrán autorizar ascensos a empleados mediante exámenes individuales cuando las exigencias excepcionales y especiales del servicio y las cualificaciones especiales de los empleados así lo justifiquen.*

*b) Por exigencias excepcionales y especiales se entenderá la necesidad de reclutar personal por razón de las siguientes situaciones:*

*1. Asignación o atención de nuevas funciones o programas; o*

*2. Ampliación de los servicios que presta la agencia; o*

*3. Necesidad de reclutar personal que logre mantener la continuidad en la prestación de los servicios sin necesidad de mayor orientación; o*

*4. Inadecuacidad de un registro de elegibles; o*

*5. Urgencia para cubrir un puesto vacante que hace impracticable el procedimiento ordinario.*

*c) Para determinar las cualificaciones de los empleados se considerarán, entre otros, los siguientes criterios:*

*1. Resultados obtenidos del Sistema de Evaluación adoptado por la agencia, por aquellos empleados que alcancen o sobrepasen el nivel esperado en la ejecución de tareas y cumplimiento de los criterios de orden y disciplina;*

*2. Estudios académicos adicionales a los requisitos mínimos, directamente relacionados con las funciones del puesto al que se le propone ascender;*

*3. Adiestramientos o cursos aprobados directamente relacionados con las funciones del puesto al que se le propone ascender, que sean adicionales a los requisitos mínimos requeridos;*

*4. Experiencia, adicional a la requerida, adquirida mediante designaciones oficiales de interinatos, asignaciones administrativas o intercambio de personal, directamente relacionada con las funciones del puesto al que se propone ascender."* █

Como es sabido, lo acordado mediante el Convenio es ley entre las partes y rige las relaciones obrero patronales, siempre y cuando el mismo no contravenga las leyes ni la Constitución del Estado Libre Asociado de Puerto Rico. *Vélez Miranda v. Servicios Legales de Puerto Rico, Inc.,* 144 D.P.R. 673 (1998); *Martínez Rodríguez v. A.E.E.,* 133 D.P.R. 986 (1993); *J.R.T. v. Vigilantes, Inc.,* 125 D.P.R. 581 (1990); *U.I.L. de Ponce v. Dest. Serrallés, Inc.,* 116 D.P.R. 348 (1985).

Por otro lado, *"[e]l alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de la evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho."* Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da. Ed., Bogotá, Forum, 2001, pág. 534.

El expediente de la agencia constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior. Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2168. *Municipio de San Juan v. Junta de Calidad Ambiental,* **2000 J.T.S. 193**; *T-JAC v. Caguas Centrum Limited,* **99 J.T.S. 60**; *Rivera v. A & C Development Corp.,* 144 D.P. R. 450 (1997); *Agosto v. Fondo del Seguro del Estado,* 132 D.P.R. 866 (1993). Para que el tribunal revisor se encuentre en posición de analizar la determinación tomada por el organismo administrativo, es imprescindible que las agencias acojan determinaciones de hechos y de derecho.

La parte que objete las determinaciones de hechos emitidas por una agencia administrativa deberá acreditar que el organismo actuó de manera arbitraria, caprichosa o en patente menoscabo a derechos fundamentales. *Maisonet v. Fondo del Seguro del Estado,* 142 D.P.R. 194 (1996); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987).

En tanto, y contrario a las determinaciones estrictamente de hechos, las conclusiones que son puramente de derecho podrán revisarse en todos sus extremos, sin sujeción a norma o criterio alguno. *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, supra.* Véase además: sec. 4.5 de LPAU, *supra,* 3 L.P.R.A. sec. 2175.

Es ampliamente conocido que las actuaciones de las agencias administrativas gozan de la más dilatada deferencia. No obstante, la deferencia no ha de ser óbice para la revisión en aquellos casos donde la misma menoscabe derechos de índole fundamental o sea irrazonable. █ *Costa Wood, et al. v. Caguas Expressway Motors, Inc., supra; Reinaldo Castillo Camacho v. Dpto. del Trabajo,* **2000 J.T.S. 154**; *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85 (1997); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692 (1975); *Quevedo Segarra v. J.A.C.L.,* 102 D.P.R. 87 (1974); *Rodríguez v. Comisión Industrial,* 99 D.P.R. 368 (1970); *Román v. Superintendente de la Policía,* 93 D.P.R. 685 (1966).

El criterio rector para los tribunales será la razonabilidad en la actuación de la agencia recurrida. Así pues, al realizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa.

*Habida cuenta de ello, precisa destacar que la deferencia reconocida no equivale a la renuncia de la función*

*revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., supra; Rodríguez v. Comisión Industrial,* 99 D.P.R. 368 (1970).

Además, es axioma judicial que ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. *Dye-Tex de P.R. v. Royal Ins. Co.,* **2000 J.T.S. 67**; *Rodríguez Roldán v. Municipio de Caguas,* 133 D.P.R. 694 (1993). Hemos examinado detenidamente las comparecencias de las partes. Nos hallamos en posición de resolver. Así lo hacemos.

## III

Por estar íntimamente relacionados entre sí, hemos de discutir en conjunto los errores señalados.

La parte recurrida alega que en este caso la veda electoral no es de aplicación, pues las querellas se iniciaron en junio y julio de 2000, con anterioridad a la prohibición electoral. Además, arguyen que con posterioridad a la veda, el 15 de febrero de 2001, los representantes del Departamento acordaron validar el acuerdo de 12 de diciembre de 2000, por lo que el referido acuerdo ratificó el de controversia. *"...No es un nombramiento en veda electoral; es la culminación de un proceso establecido por mutuo acuerdo entre Unión y Patrono que se llama Proceso de Quejas y Agravios establecido en un Convenio Colectivo....". Alegato,* pág. 13.

Como señaláramos, uno de los componentes del principio de mérito lo es la veda electoral. Resulta ineludible concluir, que cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, que sea efectuada durante la aludida prohibición, y la cual no haya sido refrendada acorde a lo dispuesto en ley y reglamentación será ilegal, y por ende, carente de validez. En este caso, el acuerdo en controversia se forjó el 12 de diciembre de 2000, ello es en plena veda electoral. Este hecho no está en controversia.

A pesar de ello, la parte recurrida argumenta que por razón de haberse iniciado el proceso en los meses de junio y julio, el acuerdo fue sino una culminación del procedimiento de quejas y agravios del Convenio. ██ Por ello, la Unión y la Comisión enarbolan que no se laceró la veda electoral. No les asiste la razón.

De conformidad al derecho vigente, el Departamento tenía la obligación de incorporar el principio de mérito al sistema de personal; ello no incluye al personal que tuviera derecho a negociar colectivamente. *Reyes Coreano v. Director Ejecutivo, supra; McCrillis v. Aut. Navieras de P.R., supra.* Así pues, el personal del Departamento que es cubierto por convenios colectivos no le es de aplicación el principio de mérito, así como tampoco estaría obligado a incorporar el mismo en el convenio finalmente adoptado.

No obstante ello, es incontrovertible que los representantes de la Unión incorporaron el principio de mérito en el Convenio de autos. Así se expresa en la sección 1 del Artículo VIII del aludido Convenio, anteriormente citada. Ciertamente, lo acordado entre las partes en cuanto al Convenio Colectivo es ley entre las partes y han de regir las relaciones obrero-patronales. *Vélez Miranda v. Servicios Legales de Puerto Rico, Inc.,* 144 D.P.R. 673 (1998). Asimismo, la negociación colectiva y los procedimientos establecidos por ésta revisten interés público, pues son medios directos y eficaces de promover la paz y la estabilidad de la industria. *Pérez v. Autoridad de Fuentes Fluviales,* 87 D.P.R. 118 (1963).

Como señaláramos, el Convenio acoge el *Reglamento de Personal de Carrera del Departamento de Recursos Naturales y Ambientales,* este Reglamento cobija a su vez el principio de mérito, y en consecuencia la veda electoral. ██ Por ende, resulta inevitable concluir que el acuerdo suscrito el 12 de diciembre de 2000 es nulo y contrario al Convenio. El argumento en contrario, conforme lo adoptado por la Comisión es erróneo en derecho y así, pues, es revisable por este tribunal. Precisa destacar que la deferencia reconocida a los foros administrativos no equivale a la renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta

ser cuando el organismo administrativo ha errado en la aplicación de la ley. *Reyes Salcedo v. Policía de P.R., supra; Rodríguez v. Comisión Industrial, supra*. En fin, validar el acuerdo bajo el raciocinio de que éste fue iniciado en meses previos a la veda electoral, es irrazonable.

De igual forma, la estipulación de 15 de febrero de 2001, no subsana una falta que está en evidente e irremediable contravención a la ley. ■ No empece la actuación de los representantes legales del Departamento fue incorrecta, ello no valida lo que tuvo su origen en la nulidad. ■ Además, como es sabido que un error administrativo no confiere derechos, ya que *"...[e]n el supuesto de que la agencia administrativa hubiese cometido algún error en la aplicación de la ley, esa actuación no sería válida...."*. *Del Rey v. J.A.C.L.*, 107 D.P. R. 348 (1978), a la pág. 355. De igual forma, al ser la acción administrativa una inválida, ésta *"...no obliga al organismo, ni impide su corrección...."*. *Martínez Figueroa v. Oficina del Gobernador (Propia), etc.*, **2000 J.T.S. 185**, a la pág. 427.

En adición a lo anterior, el proceso de ascenso conforme estipulado en el Convenio, provee para los ascensos con competencia, y aquéllos sin oposición. En caso de ser un ascenso con competencia, el empleado deberá formar parte de un registro de elegibles para poder ser ascendido. *Convenio Colectivo*, Artículo IX, sección. 2c. ■ Asimismo, los ascensos sin oposición se podrán autorizar mediante exámenes individuales *"...cuando las exigencias excepcionales y especiales del servicio y las cualificaciones especiales de los empleados así lo justifiquen."* *Convenio Colectivo*, Artículo IX, sección. 3ª. ■

Conforme a lo estipulado en el Convenio con respecto a los requisitos para cumplir con un ascenso sin competencia, no hay prueba en autos de que ello se haya cumplido. De acuerdo al Reglamento, el Secretario del Departamento tendría que solicitar un permiso especial del Administrador de la Oficina Central de Asesoramiento Laboral y Administración de Recursos Humanos (OCALARH), en aquellos casos que se plantee alguna transacción de áreas esenciales al principio de mérito, durante la veda electoral. ■ Ello, para actuar de conformidad con las disposiciones reglamentarias y estatutarias vigentes.

Sin embargo, no hallamos que el caso de marras esté conformado como una de las excepciones establecidas en el Reglamento, y que, por ende, requeriría de parte del Secretario la justificación ante el Administrador de OCALARH del porqué efectuar el movimiento de personal normalmente vedado por la prohibición electoral. Reiteramos que aun si el Convenio no adopta de forma expresa la veda electoral, una vez incorpora el principio de mérito acoge consigo todos sus elementos, incluyendo la veda electoral.

Así pues, y por último, es ineludible que el factor neurálgico del caso ante nos radica en que aun si la parte recurrente tuviera la intención de validar el acuerdo en controversia, estaría impedido por la prohibición contenida en el principio de mérito, conforme fue acogido en el Reglamento del Departamento. Además, *"...no se puede pretender, pues, que una actuación administrativa de dudosa corrección impida a la agencia pertinente que se corrija...."*. *Del Rey v. J.A.C.L., supra*, a la pág. 356. ■ Se cometieron los errores señalados.

## IV

Por los fundamentos anteriormente expresados, revocamos la *Decisión y Orden* de autos.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2003 DTA 120**

1. El Informe de la Oficial Examinadora, según fuera acogido por la Comisión, acoge el acuerdo que suscribieron los representantes legales del Departamento y los representantes de los vigilantes querellantes. Conforme al Informe, el acuerdo

establecía, lo siguiente:

"*Las partes han llegado a un acuerdo la cual quieren verter para el récord.*

*1. Que a los querellantes se le hará todo trámite de documentos para la reclasificación del puesto Vigilante al puesto de Sargento, el cual se trabajará para antes del viernes 22 de febrero del 2002.*

*2. Posteriormente se culminará el proceso de ascenso con la otorgación del rango antes del viernes 15 de marzo de 2002.*

*3. Además se solicita un término de diez (10) días para presentar la Estipulación final en el presente caso.*" Véase, folio núm. 47 en Apéndice de autos.

**2.** Véase, Informe, folio núm. 61 en Apéndice de autos.

**3.** Aprobado el 29 de Julio de 1999.

**4.** Véase, *Reglamento*, folios núm. 106-107 en Apéndice de autos.

**5.** Véase, *Convenio Colectivo*, folio núm. 15 en Apéndice de *Alegato* de parte recurrida.

**6.** La sección 7.1 del Reglamento, es básicamente idéntica a las disposiciones aquí citadas del Convenio con respecto a las normas sobre los ascensos con o sin oposición. Véase, págs. 50-53 del *Reglamento*.

**7.** Véase, *Convenio Colectivo*, folio núm. 16 en Apéndice de *Alegato* de parte recurrida.

**8.** Véase, *Convenio Colectivo*, folio núm. 17 en Apéndice de *Alegato* de parte recurrida.

**9.** "*No empece esta deferencia, la interpretación de la agencia no merece deferencia si la misma afecta derechos fundamentales, resultare irrazonable, o conduce a la comisión de injusticias. Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company, res. El 2 de abril de 1998, 98 J.T.S. 38.*" Según citado en *Costa Wood, et al. v. Caguas Expressway Motors, Inc., supra,* a la pág. 489.

**10.** El convenio provee en su Artículo XVII, *Procedimiento para la Resolución de Quejas y Agravios entre las Partes.* El procedimiento consiste de tres pasos: el primero comprende la reunión entre el quejoso y su supervisor inmediato así como un delegado de la Unión. Las partes han de suscribir una certificación del resultado de la reunión con copia a la Oficina de Asuntos Laborales y a la Unión. El segundo paso vislumbra un Comité de Conciliación, el resultado del cual formará parte del expediente del caso. Por último, el tercer paso está formado por un proceso de arbitraje ante la Comisión. Véanse, págs 33-37 del *Convenio*, folios núms. 23-27 en Apéndice de parte recurrida.

**11.** Véase, folio núm. 106 en Apéndice de autos.

**12.** Valga señalar, que la aludida estipulación no constituyó un acuerdo, sino una propuesta transaccional que no llegó a materializarse. Así lo demuestra el pre-acuerdo según esbozado por la Oficial Examinadora en su Informe, al concederse el término de diez (10) días a las partes para que sometieran su *estipulación final.* Evidentemente, aún bajo el supuesto de que el pre-acuerdo pudiera ser válido, de operar circunstancias distintas a làs que rigen el caso de marras, éste requería la producción de un acuerdo final. Ello, nunca llegó a concretarse.

**13.** Ciertamente, los representantes legales del Departamento no tenían que acudir al contenido de una minuta para reconocer desde el inicio que dicha transacción fue realizada en plena veda electoral. Ello es reprochable.

**14.** Véase, folio núm. 16 en Apéndice de *Alegato* parte recurrida.

**15.** Véase, folio núm. 17 en Apéndice de *Alegato* parte recurrida.

**16.** Véase, Reglamento, a la pág. 154.

**17.** Además, a los vigilantes involucrados en el caso ante nos, les asiste el derecho de solicitar el ascenso deseado de conformidad con el proceso estatuido en el Convenio, siempre y cuando se respeten los principios y postulados de nuestro ordenamiento jurídico.