EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Méndez Jiménez, David Matos Vélez, Joshua Matos Méndez; Wigbaldo Echevarría Rivera; Luis A. Torres Ramírez de Ayreflor; Alexander Arce Nieves<br><br>Recurridos<br><br>v.<br><br>Carso Construcción de Puerto Rico, LLC; Puerto Rico Telephone Company, Inc. h/n/c Claro<br><br>Peticionarios | Certiorari<br><br>2019 TSPR 99<br><br>202 DPR ____ |

Número del Caso: AC-2016-96

Fecha: 22 de mayo de 2019

Tribunal de Apelaciones:

    Región Judicial de Arecibo-Guayama – Panel XII

Abogado de la parte peticionaria:

    Lcdo. Carlos A. Padilla Vélez
    Lcdo. Antonio L. García Ramírez

Puerto Rico Telephone Company, Inc.:

    Lcda. Alicia Figueroa Llinás

Abogados de la parte recurrida:

    Lcdo. Juan Raúl Mari Pesquera
    Lcdo. Marcos Francisco Soto Méndez

Materia: Sentencia con Opinión de conformidad y Opinión disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Méndez Jiménez, David Matos Vélez, Joshua Matos Méndez; Wigbaldo Echevarría Rivera; Luis A. Torres Ramírez de Ayreflor; Alexander Arce Nieves<br>        Recurridos<br><br>                v.<br><br>Carso Construcción de Puerto Rico, LLC; Puerto Rico Telephone Company, Inc. h/n/c Claro<br>        Peticionarios | AC-2016-0096 |

SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2019.

Acogida la apelación y evaluados los alegatos de las partes, revocamos el dictamen emitido por el Tribunal de Apelaciones. Se reinstala la Sentencia del Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión de conformidad a la cual se unieron los Jueces Asociados señor Kolthoff Caraballo, señor Rivera García y señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió una Opinión disiente. La Jueza Presidenta Oronoz Rodríguez, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez disienten.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Méndez Jiménez, David
Matos Vélez, Joshua Matos
Méndez; Wigbaldo Echevarría
Rivera; Luis A. Torres
Ramírez de Ayreflor;
Alexander Arce Nieves
            Recurridos

v.

Carso Construcción de Puerto
Rico, LLC; Puerto Rico
Telephone Company, Inc. h/n/c
Claro

            Peticionarios

AC-2016-096

Opinión de Conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES a la que se unieron los Jueces Asociados señor KOLTHOFF CARABALLO, señor RIVERA GARCÍA y señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 22 de mayo de 2019.

El Tribunal de Primera Instancia desestimó una querella sobre Despido Injustificado presentada por varios contratistas independientes, ya que estos habían pactado una cláusula de arbitraje con la parte querellada. El Tribunal de Apelaciones revocó el dictamen. Determinó que el tribunal inferior debió determinar si los contratistas advinieron empleados. Indicó que las controversias al amparo de la Ley Núm. 80, infra, no pueden estar sujetas a un convenio de arbitraje.

Estoy conforme con que se revoque la determinación del Tribunal de Apelaciones. La Ley

Núm. 80, _infra_, no provee para que se reconozca una excepción a la obligación de arbitrar cuando se pacta una cláusula de arbitraje. Por lo tanto, aun si se determinara que los recurridos en este caso tienen una causa de acción al amparo de la Ley Núm. 80, _infra_, las partes estarían obligadas a agotar el remedio contractual de arbitraje.

I

Durante los años 2014 y 2015, Carso Construcción de Puerto Rico, LLC (en adelante, Carso) contrató a los señores José Méndez Jiménez, David Matos Vélez, Joshua Matos Méndez, Wigbaldo Echevarría Rivera, Luis A. Torres Ramírez de Ayreflor y Alexander Arce Nieves (en conjunto, los recurridos) para prestar servicios a cambio de compensaciones fijas por hora. Los recurridos firmaron contratos de servicio con Carso que disponían que la relación entre las partes sería de contratistas independientes, por lo que no tendrían acceso a los beneficios que Carso otorgaba a sus empleados. Esos contratos tenían vigencia de treinta días y serían renovados mes a mes a discreción de Carso. En cada contrato se incluyó una cláusula de arbitraje que dispone que

> cualquier disputa sobre la interpretación, validez, cumplimiento o terminación de este Contrato que no haya sido resuelta por las partes, deberá ser sometida a arbitraje compulsorio en la ciudad de San Juan, Puerto Rico, de conformidad con las reglas de la American Arbitration Association. Los costos de arbitraje, incluyendo los honorarios del árbitro, serán pagados por partes iguales, por el CONTRATISTA y CARSO. Cada parte pagará los

honorarios de su propio abogado y los gastos de preparación y presentación de evidencia.

Sin hacer caso a la cláusula de arbitraje, el 1 de noviembre de 2015 los recurridos presentaron ante el Tribunal de Primera Instancia una querella sobre Despido Injustificado en contra de Carso y su cliente, la Puerto Rico Telephone Co. h/n/c Claro. Ese caso fue tramitado bajo el procedimiento sumario de reclamaciones laborales.

Oportunamente, Carso solicitó la desestimación de la querella. Arguyó que los recurridos no fueron despedidos, pues fueron contratados como contratistas independientes. Además, alegó que los contratos tenían vigencia de 30 días y Carso podía renovarlos mensualmente, lo cual hizo hasta las fechas en que decidió no renovarlos. Asimismo, adujo que el Tribunal de Primera Instancia carecía de jurisdicción para atender la controversia, ya que los contratos que suscribieron los recurridos con Carso contenían una cláusula de arbitraje.

Los recurridos se opusieron. Alegaron que la cláusula de arbitraje perdió su efectividad cuando se renovaron los contratos. Por otro lado, expresaron que no contaban con fondos para sufragar el proceso de arbitraje, ni tenían pleno conocimiento de lo que ello involucraba.

El Tribunal de Primera Instancia desestimó la querella presentada por los recurridos. Resolvió que la cláusula de arbitraje en los contratos de servicio privaba de jurisdicción al tribunal.

En desacuerdo, los recurridos presentaron una apelación ante el Tribunal de Apelaciones. En síntesis, adujeron que la cláusula de arbitraje es inválida, ya que ellos no tenían la capacidad para comprender el concepto de arbitraje ni se les explicó este al momento de firmar el contrato. Además, arguyeron que sería injusto remitir la controversia a arbitraje, pues no contaban con los recursos para costear el proceso.

El Tribunal de Apelaciones revocó el dictamen recurrido. Resolvió que el foro primario debía examinar si los contratos realmente establecían a los recurridos como contratistas independientes o si, por el contrario, creaban una relación de patrono y empleado. Expresó que la cláusula de arbitraje sería inaplicable si se resuelve que los recurridos están cobijados por la Ley de Despido Injustificado, Ley Núm. 80 del 30 de mayo de 1976, 29 LPRA sec. 185 et seq., según enmendada.

El 10 de agosto de 2016, Carso presentó un recurso de apelación ante este Tribunal. Señaló que el Tribunal de Apelaciones erró al condicionar la eficacia de la cláusula de arbitraje a que los recurridos no estén cobijados por la Ley Núm. 80, supra. Además, indicó que la determinación del Tribunal de Apelaciones es inconsistente con las sentencias previas de ese tribunal y que, por ello, estamos facultados para acoger el recurso de apelación. Los recurridos se opusieron. Expusieron esencialmente los

mismos argumentos que presentaron ante el foro apelativo intermedio.

El 16 de diciembre de 2016 acogimos la apelación ya que, en efecto, la Sentencia del Tribunal de Apelaciones en este caso es inconsistente con varias sentencias previas de ese foro.

II

En Puerto Rico rige el principio de la libertad de contratación y, como parte de este principio, las partes contratantes "pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Art. 1207 del Código Civil, 31 LPRA sec. 3372. Los contratos se perfeccionan por el mero consentimiento, y desde ese momento cada una de las partes viene obligada no solo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 LPRA sec. 3375.

El arbitraje es una figura jurídica de naturaleza contractual. Municipio Mayagüez v. Lebrón, 167 DPR 713, 720 (2006). El Art. 1 de la Ley de Arbitraje de Puerto Rico, Ley Núm. 376 de 8 de mayo de 1951, 32 LPRA sec. 3201 et seq., según enmendada, establece que dos o más partes podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de ese

acuerdo o en relación con él. Véanse Municipio Mayagüez v. Lebrón, supra, pág. 720; Crufon Const. v. Aut. Edif. Púbs., 156 DPR 197, 204 (2002). Ese convenio de arbitraje será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. Art. 1 de la Ley de Arbitraje, 32 LPRA sec. 3201.

Las partes están obligadas a cumplir con el arbitraje pactado expresamente. Esa obligación nace del principio de la buena fe. Constructora Estelar v. Aut. Edif. Púb., 183 DPR 1, 41-42 (2011). Este principio exige no defraudar la confianza que el otro ha puesto en una promesa o conducta y la prohibición de actuar contra los propios actos. Íd. El Derecho no da albergue a conducta contradictoria que mine la confianza depositada en una u otra parte. Íd.

Cónsono con ello, el Art. 3 de la Ley de Arbitraje, 32 LPRA sec. 3203, dispone que

> [s]i cualquiera de las partes de un convenio escrito de arbitraje incoare acción u otro recurso en derecho, el tribunal ante el cual dicha acción o recurso estuviere pendiente, una vez satisfecha de que cualquier controversia envuelta en dicha acción o recurso puede someterse a arbitraje al amparo de dicho convenio, dictará, a moción de cualquiera de las partes del convenio de arbitraje, la suspensión de la acción o recurso hasta tanto se haya procedido el arbitraje de conformidad con el convenio.

En atención a esta normativa, el Tribunal de Primera Instancia desestimó la causa de acción de los recurridos. Expresó que estos conocían o debieron conocer, al momento de contratar con Carso, el alcance de las obligaciones que

contrajeron libre y voluntariamente, tal y como expresamente se consignó en los contratos. Además, determinó que el hecho de que los recurridos no posean los recursos económicos para sufragar los costos de arbitraje que pactaron, no puede ser un criterio para dejar sin efecto una obligación válidamente contraída. Por otro lado, indicó que la alegada falta de conocimiento de los recurridos para entender el proceso de arbitraje no justifica que se deje sin efecto la obligación. Se basó en que la obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones económicas.

Los recurridos alegaron ante el Tribunal de Apelaciones que el Tribunal de Primera Instancia omitió tomar como ciertas todas las alegaciones bien alegadas en la demanda, entre ellas que se convirtieron en empleados de Carso a tiempo indefinido con todos los beneficios de las leyes laborales. Además, arguyeron que existió vicio en el consentimiento en cuanto a la cláusula de arbitraje. Por ello, concluyeron que el foro primario erró al desestimar la querella.

El Tribunal de Apelaciones revocó el dictamen del Tribunal de Primera Instancia porque entendió que el foro inferior erró al no dirimir la controversia sobre el alcance y la naturaleza de los contratos otorgados entre los recurridos y Carso. Razonó que era necesario que el

foro primario llevara a cabo ese ejercicio, ya que de su resultado depende si aplica o no la cláusula de arbitraje.

III

La alegación de Carso de que el tribunal no tenía jurisdicción para atender la controversia se basó en que se incluyó una cláusula de arbitraje en los contratos que son objeto de la querella. Por lo tanto, mediante su moción de desestimación, lo que Carso en realidad solicitó fue la paralización del procedimiento ante el tribunal en virtud de la política pública que existe en nuestro ordenamiento, que favorece el método de solución de disputas acordado por las partes. Esa política pública es la que se recoge en la Ley de Arbitraje, supra, y está motivada por el interés del Estado de facilitar la solución de disputas por la vía más rápida, flexible y menos onerosa que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes. H.R., Inc. v. Vissepó & Diez Constr., 190 DPR 597, 605 (2014).

A la hora de determinar si una controversia es arbitrable, los tribunales deben prestar atención especial a si el propio contrato establece ciertos tipos de disputas específicas que se verán en arbitraje o si excluye algunas controversias particulares. Medina v. Cruz Azul de P.R., 155 DPR 735, 739 (2001). Esto se debe a que, siendo el arbitraje un asunto contractual, no se puede obligar a una parte a someter a arbitraje una disputa que

no ha acordado someter. Mun. de Ponce v. Gobernador, 136 DPR 776, 783 esc. 1 (1994).

Por otro lado, la naturaleza y extensión de los poderes del árbitro están delimitados por el lenguaje y la intención del acuerdo de arbitraje. World Films, Inc. v. Paramount Pict. Corp., 125 DPR 352, 362 (1990). Como regla general, cuando la cláusula de arbitraje es lo suficientemente amplia, el árbitro tiene la autoridad de adjudicar prácticamente todo tipo de controversia legal. Íd. Así, una cláusula de arbitraje puede ser lo suficientemente amplia como para incluir entre los asuntos a ser llevados a dicho foro la existencia o no de un contrato. Íd.

La cláusula de arbitraje en controversia es amplia. Incluye todo tipo de controversia que pueda surgir en relación con el contrato. Específicamente, los recurridos pactaron con Carso que se someterá a arbitraje cualquier disputa sobre la interpretación, validez, cumplimiento o terminación del contrato que no haya sido resuelta por las partes.

Esa cláusula de arbitraje también establece que el procedimiento de arbitraje se dirimirá bajo las reglas de la *American Arbitration Association* (AAA). Ese reglamento dispone que el árbitro tendrá el poder para determinar la existencia o validez de un contrato del cual una cláusula de arbitraje forma parte. ("*The arbitrator shall have the power to determine the existence or validity of a contract*

*of which an arbitration clause forms part.*") Employment, Arbitration Rules and Mediation Procedures, sec. 6(b), pág. 12 https://www.adr.org/sites/default/files/EmploymentRules We b.pdf. (última visita, 22 de mayo de 2019).

Ya que las partes pactaron que los asuntos sobre la interpretación, validez, cumplimiento o terminación del contrato serían sometidos a arbitraje bajo las reglas de la AAA y esas reglas facultan al árbitro a dirimir ese tipo de controversias, el foro primario no puede entender en la controversia respecto al alcance y la naturaleza de los contratos. Esa determinación fue reservada para el árbitro. Ante un convenio de arbitraje lo prudente es la abstención judicial, aunque esa intervención no esté vedada. Municipio Mayagüez v. Lebrón, supra, pág. 721. Así, aunque el Tribunal de Primera Instancia conserva jurisdicción en este caso, su intervención en cualquier asunto relativo a los méritos de este, incluyendo la interpretación de los contratos de servicio, constituiría un abuso de discreción.

Luego de que el árbitro realice una determinación en cuanto al alcance y la naturaleza de los contratos, estará en posición de determinar si la cláusula de arbitraje es aplicable. Al acordar que el procedimiento se realizará bajo las reglas de la AAA, las partes delegaron al árbitro el poder de determinar si la cláusula de arbitraje aplica o no. Esas reglas disponen que el árbitro tendrá el poder

de adjudicar en su propia jurisdicción, incluyendo cualquier objeción con respecto a la existencia, alcance o validez del acuerdo de arbitraje. ("*The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.*") Employment, Arbitration Rules and Mediation Procedures, sec. 6(a), pág. 12, https://www.adr.org/sites/default/files/EmploymentRules_We b.pdf. (última visita, 22 de mayo de 2019).

El reglamento de la AAA establece que la cláusula de arbitraje debe tratarse como un acuerdo independiente de los otros términos del contrato. Además, dispone que una decisión del árbitro de que el contrato es nulo e inválido no deberá, por esa razón solamente, invalidar la cláusula de arbitraje.[1] Conforme a esta normativa, aun si se determinara que los contratos establecen a los recurridos como empleados de Carso y estos tuvieran una causa de acción al amparo de la Ley Núm. 80, supra, opino que ello, por sí solo, no tornaría inaplicable la cláusula de arbitraje.

IV

---

[1] ("*[The] arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.*") Íd., sec. 6(b).

Ahora bien, ¿aplican las cláusulas de arbitraje compulsorio a reclamaciones sobre Despido Injustificado al amparo de la Ley Núm. 80, supra?

Hemos reconocido excepciones limitadas a la regla del cumplimiento previo de la obligación de arbitrar cuando se pacta una cláusula de arbitraje. Quiñones v. Asociación, 161 DPR 668, 673 (2004). En F.S.E. v. J.R.T., 111 DPR 505 (1981), reconocimos una excepción a esta norma en los escenarios en que una unión falta a su deber de proveer a sus representados justa representación. Así también, hemos resuelto que las partes pueden obviar el arbitraje cuando recurrir a este método de resolución de disputas constituye un gesto fútil y vacío. Hermandad Unión de Empleados v. F.S.E., 112 DPR 51 (1982). En las otras ocasiones en las que hemos reconocido excepciones, hemos basado nuestro razonamiento en que las disposiciones de las leyes y los reglamentos que rigen las controversias respectivas expresamente prohíben el arbitraje.

Tal fue el caso en Vélez v. Serv. Legales de P.R., Inc., 144 DPR 673 (1998). Una empleada presentó una demanda contra su patrono al amparo de la Ley Núm. 17 de 22 de abril de 1988, 29 LPRA sec. 155 et seq., que prohíbe el hostigamiento sexual en el empleo. La cláusula de arbitraje establecía que cualquier disputa se referiría a un árbitro. Concluimos que la intención del legislador al promulgar la Ley Núm. 17, íd., era "clara al establecer que el empleado afectado por un acto de hostigamiento

sexual no se [debe ver] obligado a acudir a ningún foro administrativo antes de recurrir al foro judicial civil, ni del Estado, ni del patrono, ni del que pudiera establecerse en virtud de convenio". Vélez v. Serv. Legales de P.R., Inc., supra, pág. 686. Así pues, reconocimos que por mandato expreso legislativo existe una excepción a nuestra política pública a favor del arbitraje en estos escenarios.

En Medina v. Cruz Azul de Puerto Rico, supra, la controversia giraba en torno a si una empleada unionada, que demandó a su patrono por discrimen por razón de sexo y embarazo, podía obviar el procedimiento de arbitraje que se estableció en el convenio colectivo y acudir directamente al tribunal. Resolvimos que se podía obviar el arbitraje ya que: (1) se trataba de una acción por despido discriminatorio al amparo de la Ley Núm. 100, infra, y (2) las partes acordaron que sus disputas se resolverían exclusivamente ante un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo. Esta conclusión se basó en que el Reglamento del Negociado de Conciliación y Arbitraje claramente establecía que las reclamaciones bajo la Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 149 et seq., no podrían ser ventiladas ante sus árbitros.

Luego, en Quiñones v. Asociación, supra, atendimos la interrogante de si un empleado unionado podía acudir directamente al tribunal para reclamar despido

discriminatorio patronal por razón de edad, aun cuando en el convenio colectivo se acordó que las disputas laborales serían dirimidas ante un árbitro oficial o privado. Determinamos que los tribunales conservan jurisdicción para entender en los casos de despido patronal discriminatorio por razón de edad desde el primer momento en que surja la causa de acción, aunque se hubiera establecido lo contrario en el convenio colectivo.

Para llegar a esa conclusión, acudimos al Art. 4 de la Ley Núm. 100, supra. Esa disposición establece que, en los casos de discrimen por razón de edad, raza, color, sexo, religión, origen social o nacional, o condición social, el Tribunal de Primera Instancia y el Tribunal de Distrito tendrán jurisdicción original concurrente, siempre que las controversias surjan bajo ciertas secciones específicas de la ley. Así, determinamos que no procedía quitarles a los tribunales una facultad que expresamente les concedió el legislador.

La controversia que tenemos ante nos gira en torno a una causa de acción por despido injustificado, mas no discriminatorio. Los recurridos basaron su reclamación en la Ley Núm. 80, supra. Esta ley fue aprobada por la Asamblea Legislativa como parte del interés apremiante del Estado para regular las relaciones obrero patronales y evitar prácticas injustas del trabajo. Díaz v. Wyndham Hotel Corp., 155 DPR 364, 374 (2001). En la Ley Núm. 80, supra, no existe una disposición análoga a las

disposiciones de las Leyes Núm. 100, supra, y Núm. 17, supra, que específicamente disponen que, en ciertos escenarios, los tribunales tienen jurisdicción original para hacer valer los derechos de los obreros bajo esas leyes sin necesidad de acudir previamente a otro tipo de foro, aunque se haya pactado algo distinto. La Ley Núm. 80, supra, no provee para que reconozcamos una excepción a la obligación de arbitrar cuando se pacta una cláusula de arbitraje. Por consiguiente, aun si se determinara que los recurridos tienen una causa de acción al amparo de la Ley Núm. 80, supra, no existe impedimento para que se obligue a las partes a agotar el remedio contractual de arbitraje.

A la luz de lo anterior, opino que el Tribunal de Primera Instancia actuó correctamente al ordenar el archivo de la querella. De esa manera, ordenó el cumplimiento específico de la cláusula de selección de foro que pactaron Carso y los recurridos en los contratos de servicio. La disputa en este caso está dentro de los asuntos cubiertos por esa cláusula. Se presume la validez del consentimiento y del contrato en que el mismo fue prestado. Art. 1217 del Código Civil, 31 LPRA sec. 3404. Por lo tanto, cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. Art. 1233 del Código Civil, 31 LPRA sec. 3471. Véase García Curbelo v. A.F.F., 127 DPR 747, 760 (1991).

Cónsono con ello, cuando se pacta un proceso de arbitraje en un contrato, los tribunales carecen de discreción para determinar su eficacia y tienen que dar cumplimiento al arbitraje según lo acordado. S.L.G. Méndez-Acevedo v. Nieves Rivera, 179 DPR 359, 368 (2010). Toda duda que pueda existir sobre si procede o no el arbitraje debe resolverse a favor de este. Íd., págs. 388-389. Esto se debe a que existe una presunción de arbitrabilidad cuando el contrato contiene una cláusula de arbitraje. World Films, Inc. v. Paramount Pict. Corp., supra. Esa presunción de arbitrabilidad es aplicable a las controversias al amparo de la Ley Núm. 80, supra. Entiendo que el Tribunal de Apelaciones debió confirmar el dictamen mediante el cual el foro primario desestimó la querella de los recurridos.


                                RAFAEL L. MARTÍNEZ TORRES
                                     Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| José Méndez Jiménez, David Matos Vélez, Joshua Matos Méndez, Wigbaldo Echevarría Rivera, Luis A. Torres Ramírez de Ayreflorz; Alexander Arce Nieves<br><br>    Recurridos<br><br>        v.<br><br>Carso Construction, Inc.; Puerto Rico Telephone Company, Inc. h/n/c Claro<br><br>    Peticionarios | AC-2016-0096 | Certiorari |

Opinión Disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 22 de mayo de 2019.

Hoy tuvimos la oportunidad de emitir una Opinión dirigida a detener la práctica de determinados patronos de insertar unilateralmente cláusulas de arbitraje, con condiciones onerosas, que limitan severamente las posibilidades de acceso a remedios laborales y judiciales de empleados que no se beneficiaron de una negociación colectiva. Ello, como subterfugio para evadir los procesos que exige la Ley Núm. 2, _infra_, y que los empleados se queden desprovistos de tales protecciones. No lo hicimos, sino todo lo contrario. Por tanto, descargo mi

responsabilidad de explicar y hacer constar mis preocupaciones y fundamentos que hacen imperativo disentir.

I

Los Sres. José Méndez Jiménez, David Matos Vélez y Joshua Matos Méndez fueron contratados por Carso Construcción de Puerto Rico, LLC (Carso) bajo el término de "contratistas independientes", a los fines de realizar trabajos de construcción para la compañía telefónica Claro. El contrato tenía una vigencia de 30 días, con la salvedad de que podía ser renovado de mes a mes. Ahora bien, el contrato, redactado unilateral y exclusivamente por el patrono, incluía una cláusula de arbitraje que leía de la siguiente manera:

> DECIMATERCERA: Cláusula de Arbitraje: Cualquier disputa sobre la interpretación, validez, cumplimiento o terminación de este Contrato que no haya sido resuelta por las partes, deberá ser sometida a arbitraje compulsorio en la ciudad de San Juan, Puerto Rico, de conformidad con las reglas de la American Arbitration Association. **Los costos del arbitraje, incluyendo los honorarios del árbitro, serán pagados por partes iguales, por el CONTRATISTA y CARSO. Cada parte pagará los honorarios de su propio abogado y los gastos de preparación y presentación de su evidencia.** (Énfasis suplido).[2]

Al cabo de un año de la contratación, los señores Méndez Jiménez, Matos Vélez y Matos Méndez fueron despedidos. Bajo la creencia de que se trataba de un despido injustificado, presentaron una querella al amparo de varias leyes laborales, incluyendo la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185 et seq., en contra de Carso y la Puerto Rico Telephone Company, Inc. h/n/c Claro.[3] A su vez, optaron por beneficiarse del

---

[2]Contrato Servicios Profesionales Servicios de Construcción, pág. 3.

[3]Luego, se enmendó la querella para incluir otros trabajadores en iguales condiciones.

procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 et seq. Allí, alegaron ser empleados de Carso por lo siguiente: una vez vencieron los respectivos contratos temporales, éstos continuaron trabajando para Carso por tiempo indefinido; utilizaban los equipos y materiales de Carso; eran supervisados por éste; utilizaban uniforme; tenían que reportar las horas trabajadas y se les obligaba a tomar la hora de almuerzo. Por ello, reclamaron el pago de la mesada, el bono de navidad, las horas extras trabajadas y las licencias de vacaciones y enfermedad.

En respuesta, Carso solicitó la desestimación de la querella por falta de jurisdicción. Su solicitud estuvo basada en la cláusula de arbitraje incluida en el contrato de empleo. Por su parte, los querellantes explicaron que la cláusula de arbitraje invocada por Carso representaba una carga muy onerosa, pues no contaban con los medios económicos para sufragar ese proceso de arbitraje. Además, cuestionaron la validez de tal pacto, pues no entendían el concepto de arbitraje y no se les permitió revisar el contrato al momento de firmarlo, ni obtener copia, lo que aseveraron a través de una declaración jurada. Concluyeron que dilucidar su reclamación en el proceso de arbitraje equivaldría a privarlos del acceso a los tribunales y a la justicia.

Al evaluar la controversia, el Tribunal de Primera Instancia desestimó la querella por entender que no tenía jurisdicción a consecuencia de la referida cláusula de arbitraje. Insatisfechos, los querellantes presentaron un recurso de apelación.

Así las cosas, el Tribunal de Apelaciones revocó la sentencia tras concluir que le correspondía al foro primario

dilucidar si los querellantes eran propiamente contratistas independientes o empleados de Carso. En su análisis, incluyó que, si a los querellantes les aplicaba la Ley Núm. 80, supra, la cláusula de arbitraje sería inaplicable, pues enfatizó que la misma fue incorporada al contrato laboral bajo la premisa de que se trataba de una relación de contratista independiente.

En desacuerdo, Carso presentó el recurso de apelación que nos ocupa, a los fines de dilucidar si la cláusula de arbitraje incluida en el contrato de empleo es válida y si la reclamación al amparo de la Ley Núm. 80 puede ser adjudicada en el proceso de arbitraje. Sin embargo, para contestar tales interrogantes es forzoso examinar otros asuntos de umbral. Corresponde determinar si los querellantes pactaron válidamente la cláusula de arbitraje y, ante el lenguaje plasmado en tal cláusula, indagar dónde quedan las protecciones del proceso sumario de la Ley Núm. 2, supra.

En la Opinión de Conformidad se sostiene que la reclamación al amparo de la Ley Núm. 80, supra, puede ser atendida válidamente en el proceso de arbitraje. Ahora bien, ¿dónde queda el aspecto procesal establecido estatutariamente en nuestra jurisdicción para estos casos con controversias laborales? ¿Dónde queda la política pública e interés del Estado de favorecer a los obreros en las reclamaciones laborales? Y peor aún, no se consideraron las circunstancias particulares planteadas por los querellantes en cuanto a la validez de su consentimiento. Por todo lo anterior, respetuosamente disiento.

II

La Ley Núm. 2, _supra_, establece un procedimiento sumario para los casos de reclamaciones instadas por obreros y empleados contra sus patronos por servicios prestados. _Dávila v. Antilles_, 147 DPR 483 (1999). Así, se estableció con el propósito de facilitar "que obreros y empleados sostengan una amplia gama de reclamaciones de índole laboral contra sus patronos". _León v. Rest. El Tropical_, 154 DPR 249, 253 (2001).[4]

La creación de este estatuto responde a una política pública que busca abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero. _Lucero Cuevas v. The San Juan Star Company_, 159 DPR 494, 504 (2003). Asimismo, intenta remediar la desigualdad económica existente entre las partes al instarse una reclamación de este tipo. _Íd._

Al determinar la constitucionalidad del proceso sumario delineado en la Ley Núm. 2, _supra_, este Tribunal expresó que:

> es un procedimiento especial, de naturaleza sumaria, y por considerar el Estado, que cualquier cuestión relacionada con el contrato de trabajo, por su posible efecto sobre la economía de nuestro pueblo, está revestida de interés público, tiene ciertas disposiciones que son más favorables al obrero que al patrono, por haber sido la conclusión del estudio legislativo que no existe igualdad de medios económicos entre las partes para una adecuada defensa de sus respectivos derechos, al originarse la reclamación judicial. _Landrum Mills Corp. V. Tribunal Superior_, 92 DPR 689, 691-692 (1965); _Rivera v. Insular Wire Products_, 140 DPR 912, 922 (1996).

---

[4] Este procedimiento sumario puede utilizarse con relación a diversas reclamaciones: (1) cualesquiera derechos o beneficios laborales; (2) cualesquiera sumas en concepto de compensación por trabajo o labor realizado; (3) cualesquiera compensaciones en caso de que dicho obrero o empleado hubiese sido despedido de su empleo sin justa causa, o (4) cuando el Legislador lo haya dispuesto expresamente al aprobar otras leyes protectoras de los trabajadores. _Rivera v. Insular Wire Products_, 140 DPR 912, 922 (1996).

Entre los beneficios y protecciones que contempla la Ley Núm. 2, _supra_, a favor de los obreros están: la acumulación de reclamaciones; la celeridad del proceso; la limitación en el descubrimiento de prueba; la imposición de la rebeldía y la posibilidad de que intervenga el Secretario del Trabajo y Recursos Humanos. Particularmente relacionado con la controversia de autos, está el beneficio de que la concesión de costas en el proceso sea de oficio y, de dictarse sentencia a favor del querellante, el querellado pague los honorarios de abogado. Se ha interpretado que lo anterior significa que "las alegaciones que se presentan al amparo del procedimiento sumario dispuesto por el mencionado estatuto, no cancelan Sellos de Rentas Internas ni de índole otra alguna". _Valentín v. Housing Promoters, Inc._, 146 DPR 712, 718 (1998).

Como se puede apreciar, la Ley Núm. 2, _supra_, promueve que las reclamaciones laborales sean ágiles, rápidas y poco onerosas para los obreros reclamantes. Este procedimiento sumario ha sido el mecanismo principal para la implantación de la política pública del Estado de proteger al obrero y desalentar el despido sin justa causa. Exposición de motivos Ley Núm. 133-2008 (2014 (Parte 2) Leyes de Puerto Rico 1360). Véase, _Patiño Chirino v. Parador Villa Antonio_, 196 DPR 439,446 (2016). Además, su aplicación es abarcadora para fines de controversias de reclamaciones laborales. Incluso, la definición de lo que constituye un obrero y un empleado para fines de esta ley es amplia:

> La palabra 'obrero', según se emplea en las secs. 3118 a 3132 de este título, comprenderá todo trabajador manual, de cualquier sexo y a aquellas personas naturales que estuvieren empleados en servicios u ocupaciones domésticas, y la palabra 'empleado', que se usa en su acepción más amplia, comprenderá, entre otros, a toda clase de artesano, empleado o dependiente de comercio o industria. 32 LPRA sec. 3119.

### III

En el caso de autos, los querellantes basaron sus reclamaciones en varias leyes laborales, incluida la Ley Núm. 80 de despido injustificado. Ello pues plantearon que, a pesar de lo establecido en el contrato laboral, en la práctica se habían convertido en empleados de Carso.[5] Por ser una controversia laboral donde es preciso definir si son empleados para beneficiarse de las leyes laborales invocadas o no lo son por ser contratistas independientes, el proceso sumario de la Ley Núm. 2 les cobija.

Ahora bien, la controversia gira en torno a una cláusula de arbitraje incluida en el contrato entre las partes. Estoy consciente de la política pública a favor del arbitraje y de que se respeten los acuerdos entre las partes para esos fines, pero ¿qué hacemos con los derechos estatutarios que cobijan a los reclamantes? ¿Qué sucede cuando el arbitraje pactado tiene una carga sumamente onerosa para el obrero y derrota las protecciones que ofrece el Derecho Laboral? ¿Resulta válido un acuerdo de arbitraje unilateral donde una de las partes no ofreció su consentimiento informadamente?

---

[5]Véase, <u>Romero v. Cabrer Roig</u>, 191 DPR 643 (2014); <u>Whittenburg v. Col. Ntra. Sra. Del Carmen</u>, 182 DPR 937 (2011).

En nuestra jurisdicción existe una política pública a favor del arbitraje que está motivada por el interés del Estado de facilitar la solución de disputas por una vía más rápida, flexible y menos onerosa que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes. HR Inc. v. Vissepo & Diez Constr., 190 DPR 597 (2014). Sin embargo, dados los hechos particulares de autos, el proceso de arbitraje al que Carso sometió a los querellantes incumple con ese fin en comparación con las garantías ofrecidas por la Ley Núm. 2, supra. Ello, pues precisamente obliga a los querellantes a sufragar la mitad de los gastos del proceso de arbitraje y a pagar los honorarios de su abogado. Tal situación conllevaría a que los querellantes, a diferencia del proceso judicial al amparo de la Ley Núm. 2, tendrían que incurrir en un gasto monetario para poder iniciar su reclamación.

Mientras la Ley Núm. 2 establece un proceso favorecedor a los empleados y obreros en los procesos laborales, esta cláusula de arbitraje en particular convierte el proceso en uno más oneroso para el empleado, al punto de convertirlo en insostenible. **De ese modo, se estaría supeditando la tramitación de reclamaciones laborales a un asunto estrictamente económico, lo cual intenta evitar la Ley Núm. 2.** De los querellantes no contar con los medios económicos suficientes para sufragar el proceso de arbitraje, su reclamación se quedaría en un limbo jurídico, pues no tendrían oportunidad alguna de tramitarla. Resulta absurdo que obliguemos a una parte a someterse a un proceso de arbitraje el cual a todas luces no puede cumplir.

En los hechos ante nuestra consideración, el proceso de arbitraje no equivale a un remedio adecuado y oportuno en ley, sino que obstaculiza una reclamación. Si la política pública a favor del arbitraje está motivada por el interés del Estado de que la solución a las disputas se tramite por vías más rápidas y menos costosas, aplicar a la controversia de autos la cláusula de arbitraje no logra ese fin, pues, por el contrario, el proceso sumario de la Ley Núm. 2 ofrece un método más rápido y menos costoso para los reclamantes.

De otra parte, resulta preocupante que nos limitemos a examinar si un contrato incluye una cláusula de arbitraje para dejar a un lado todas las garantías procesales a favor de los obreros, las cuales forman parte de nuestro Derecho Laboral y la política pública expresamente dispuesta por la Asamblea Legislativa. Ello, sin considerar las circunstancias en que se suscribió el contrato, entiéndase: que fue uno de adhesión, que no fue una aceptación informada y que pone a los obreros en una situación muy desventajada ante su contratante. En ese sentido, resulta cuestionable la validez de su consentimiento. De la declaración jurada que prestaron los querellantes surge que no se les permitió revisar el contrato al momento de firmarlo, ni obtener copia y mucho menos que comprendían el concepto y las consecuencias de someter sus reclamaciones al proceso de arbitraje allí incluido. Por ello, el Tribunal de Primera Instancia tuvo prueba ante sí que ponía en "entredicho" la voluntariedad de estos a someterse al proceso de arbitraje.

No se trata de un Convenio Colectivo donde el patrono y los empleados negocian los asuntos que regularán su relación laboral,

como lo sería en un arbitraje obrero-patronal. La situación de hechos ante nuestra consideración se trata, más bien, de un vínculo unilateral en el que el patrono supedita la contratación del empleado a que éste renuncie a sus derechos laborales y se subsuma a un proceso de arbitraje, el cual no garantiza los derechos procesales ya establecidos estatutariamente.[6] Por tanto, los querellantes se vieron forzados a suscribir la cláusula de arbitraje. De un examen de los contratos de servicios profesionales aquí en controversia, se puede apreciar que se tratan de contratos pro-forma en el cual los contratados se limitan a escribir su información personal en los espacios en blanco y firmar. Ello, demuestra que no se trata de una negociación entre las partes, sino más bien un "lo tomas o lo dejas" teniendo el patrono el control total de la contratación. Por tanto, entiendo que no se cumple con una de las características principales de los procesos de arbitraje, a saber: la voluntariedad de las partes.

La Ley de Arbitraje de Puerto Rico, 32 LPRA sec. 3201, establece que un acuerdo de arbitraje es "válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio". 32 LPRA 3201. Por ser un asunto contractual, una de las controversias que las partes tienen el derecho a dirimir ante los tribunales, es aquella

---

[6]Debo resaltar el hecho que los casos a los que se hace referencia en la Opinión de Conformidad son relacionados a arbitrajes obrero-patronal, donde los querellantes se beneficiaron de una negociación colectiva, distinto a la situación que nos ocupa en la que se trata de obreros individuales ante un contrato unilateral.

relacionada a la obligación de arbitrar. <u>SLG Méndez-Acevedo v. Nieves Rivera</u>, 179 DPR 359, 367 (2010). De ese modo, si se cuestiona directamente la validez de un acuerdo arbitral le compete a los tribunales dilucidarlo. Íd., págs. 374-376; <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 US 440 (2006). Por estar ante la consideración de la Rama Judicial la impugnación del consentimiento ofrecido y con ello la validez de la cláusula de arbitraje, este Tribunal no debe descartar este asunto. Ello, pues los querellantes presentaron prueba de que no se les permitió revisar el contrato al momento de suscribirlo ni tenían conocimiento de la implicación de un arbitraje. Ante tal escenario, debemos indagar si el consentimiento ofrecido fue válido o si tal cláusula de arbitraje es contraria a la ley y la política pública de nuestra jurisdicción a favor de los obreros.

La fuerte política pública a favor del arbitraje no es una preferencia absoluta sobre cualquier otra política pública. <u>HR Inc. v. Vissepo & Diez Constr.</u>, supra. Coetáneamente a esta política pública está la política pública de favorecer a los empleados y obreros en sus reclamaciones laborales. Me parece muy peligroso que la segunda quede soslayada por la primera en situaciones como ésta donde se pone en duda la voluntariedad del empleado al momento de someterse a una cláusula de arbitraje. **Adoptar esta práctica equivaldría a avalar que los patronos inserten unilateralmente cláusulas de arbitraje en los contratos de empleo con condiciones onerosas que obstaculizan el acceso a la justicia y a los remedios laborales. Lo anterior, como un subterfugio para no someterse a los procesos que exige la Ley Núm. 2 y permitir que los empleados se queden desprovistos de**

**tales protecciones. Debe resultarnos alarmante que algunos patronos se aprovechen de la necesidad de empleo que existe en nuestra jurisdicción para incluir este tipo de cláusula en los contratos laborales que mina sustancialmente los derechos estatutarios.**

Me preocupa que con la aplicación automática del arbitraje se pasen por alto situaciones como la de autos. A fin de cuentas, todos sabemos que esta práctica redundará en que se vean tronchadas las aspiraciones de reclamo de las partes con medios económicos limitados y comprometidos. Ignorar este asunto conllevaría derrotar los fines perseguidos por la Ley Núm. 2.

Ante los planteamientos de los querellantes, le compete a la Rama Judicial dilucidar la validez de la cláusula de arbitraje en controversia, sujeto a decidir si el consentimiento fue válido y con las consecuencias negativas que acarrea obviar el trámite sumario de la Ley Núm. 2. Por ende, disiento de lo resuelto por este Tribunal.

Luis F. Estrella Martínez
Juez Asociado