EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Magali Medina Betancourt, et als.<br>        Demandantes-Recurridos<br><br>              v.<br><br>La Cruz Azul de P.R.<br>        Demandada-Peticionaria | Certiorari<br><br>2001 TSPR 163<br><br>155 DPR _____ |

Número del Caso: CC-2000-664


Fecha: 30/noviembre/2001


Tribunal de Circuito de Apelaciones:
                              Circuito Regional I


Juez Ponente:
                    Hon. Yvonne Feliciano Acevedo


Abogados de la Parte Peticionaria:
                    Lcdo. Tristán Reyes Gilestra
                    Lcdo. Carlos A. Padilla Vélez

Abogados de la Parte Recurrida:
                    Lcda. Shirley M. Monge García
                    Lcdo. Roberto A. Rivera Ruiz



Materia:  Despido Injustificado



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Magali Medina Betancourt,
Et als.


    Demandantes-Recurridos

       vs.                   CC-2000-664       Certiorari

La Cruz Azul de P.R.


    Demandada-Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 30 de noviembre de 2001.


En esta ocasión debemos resolver si una empleada unionada, que demanda a su patrono por discrimen por razón de embarazo, puede obviar el procedimiento de arbitraje establecido en el Convenio Colectivo y acudir directamente a los tribunales. Entendemos que en casos de discrimen, como el de autos, no es necesario acudir primero al foro arbitral.

I

**La señora Magaly Medina Betancourt (en adelante "la Sra. Medina") trabajaba como telefonista para La Cruz Azul de Puerto Rico (en adelante "Cruz Azul"). Su contrato de empleo era uno por tiempo**

**indeterminado, y estaba cubierto por el convenio colectivo suscrito entre el patrono y la Unión Independiente de Empleados Cruz Azul (en adelante "UIECA"). Cruz Azul le notificó a la señora Medina que, como parte de la reestructuración organizacional y funcional de la empresa, su plaza sería eliminada. En ese momento, la señora Medina se encontraba en avanzado estado de embarazo, y gestionando una licencia de maternidad.**

A raíz de estos hechos, la señora Medina radicó una demanda contra Cruz Azul alegando que el despido fue injustificado, y motivado por discrimen por razón de sexo y embarazo. Cruz Azul presentó una moción de desestimación alegando que el tribunal carecía de jurisdicción en el caso ya que el convenio colectivo vigente proveía un procedimiento de arbitraje para dicha controversia en el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y de Recursos Humanos de Puerto Rico (en adelante "el Negociado"). La señora Medina se opuso argumentando que la reclamación de discrimen al amparo de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 146 *et seq.*, le permite obviar el procedimiento de arbitraje y acudir directamente ante los tribunales, según lo resuelto por este Tribunal en <u>Vélez Miranda v. Servicios Legales de Puerto Rico, Inc.</u>, res. el 21 de enero de 1998, 98 TSPR 1, y lo dispuesto en el Reglamento Núm. 2948 de 27 de enero de 1983, <u>Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos</u>

<u>Humanos de Puerto Rico</u>, según enmendado (en adelante "el Reglamento").[1]

No obstante, el Tribunal de Primera Instancia desestimó la demanda por falta de jurisdicción. Inconforme, la señora Medina acudió ante el Tribunal de Circuito de Apelaciones repitiendo las alegaciones que hiciera ante el foro de instancia. El tribunal apelativo, en una excelente sentencia, revocó el dictamen de instancia por entender que el convenio colectivo incorporó en la cláusula de arbitraje las reglas y procedimientos del Negociado. Como discutiremos más adelante, el Reglamento prohíbe que las reclamaciones por discrimen bajo la Ley 100 se ventilen ante sus árbitros.

Por entender que la sentencia del foro apelativo es fundamentalmente correcta, confirmamos dicho dictamen.

II

En reiteradas ocasiones hemos expresado que en Puerto Rico existe una vigorosa política pública a favor del arbitraje como método alterno para la solución de disputas. <u>Paine Webber v. Service Concepts, Inc.</u>, res. el 13 de junio de 2000, 2000 TSPR 85. Así pues, hemos hecho claro que, de ordinario, no puede hacerse caso omiso del procedimiento de arbitraje prescrito en un contrato. <u>Buena Vista Dairy, Inc. v. J.R.T.</u>, 94 D.P.R. 624

---

[1] Dicho Reglamento fue enmendado por el Reglamento Núm. 3592 de 25 de marzo de 1988, por el Reglamento Núm. 4786 de 24 de marzo de septiembre de 1992, y por el Reglamento Núm. 6065 de 23 de diciembre de 1999. Las primeras dos enmiendas no cambiaron la cláusula del Reglamento que es de aplicación al caso de autos. La última enmienda, por otra parte, aunque sí enmendó dicha cláusula, es posterior al despido de la Sra. Medina, y es, por lo tanto, inaplicable a la controversia ante nos.

(1967). Además, hemos resuelto que existe una presunción de arbitrabilidad cuando el contrato contiene una cláusula de arbitraje. World Films, Inc. v. Paramount Pictures Corp., 125 D.P.R. 352 (1990).

Sin embargo, esta política a favor del arbitraje no es absoluta, y tiene sus excepciones. Véanse, Hermandad de Unión de Empleados v. F.S.E., 112 D.P.R. 51 (1982); F.S.E. v. J.R.T., 111 D.P.R. 505 (1981). En particular, debemos tener muy presente que dicha política está ligada a la doctrina de la autonomía de los contratantes enunciada en el Artículo 1207 de nuestro Código Civil.  31 L.P.R.A. sec. 3372. Así pues, cuando dos personas establecen un pacto en el cual se comprometen a llevar a un foro arbitral las disputas que puedan surgir del mismo, los tribunales deben, como regla general, respetar la voluntad de las partes y hacer valer el acuerdo ordenando que el asunto se resuelva primero en arbitraje. Sin embargo, no podemos olvidar que el tribunal debe poner en vigor los procedimientos y las condiciones pactadas en la cláusula de arbitraje.  Si el propio contrato entre las partes establece ciertos tipos de disputas específicas que se verán en arbitraje, o si el contrato excluye algunas controversias particulares, los tribunales deben actuar de acuerdo a lo dispuesto en el contrato.

Esto es precisamente lo que ocurre en el caso de autos.  El Convenio Colectivo bajo el cual surge esta disputa contiene una cláusula de arbitraje que, en su parte pertinente a la controversia ante nos, lee de la siguiente manera:

En los casos de suspensión o despido, las partes acuerdan obviar los primeros dos pasos del procedimiento y se acuerda que en aquellos casos en que la Unión decida cuestionar dicha suspensión o despido, deberá radicar la Solicitud de Arbitraje **en el Negociado de Conciliación y Arbitraje** dentro de los doce (12) días laborables a partir de la notificación de los cargos al Presidente de la Unión. _Convenio Colectivo entre La Cruz Azul de Puerto Rico y La Unión Independiente Empleados Cruz Azul_, Art. XXVII sec. 11 (_énfasis suplido_).

De esta manera, el Convenio Colectivo aprovecha los servicios del Negociado de Conciliación y Arbitraje. Las partes establecieron que se referirían las disputas que surgieran a un árbitro de dicho Negociado. Al utilizar los servicios del Negociado, las partes también incorporaron al Convenio Colectivo los reglamentos y los procedimientos establecidos por el Negociado.

Es de particular importancia en el caso de autos el Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico, supra. "Dicho Reglamento tiene el propósito de promover el arbitraje voluntario de las controversias obreropatronales bajo aquellos convenios colectivos o acuerdos en que se autorice al Negociado a designar un árbitro." Vélez Miranda, supra. El mismo disponía que:

**Los casos por discriminación cubiertos por las disposiciones de la Ley 100 de 30 de junio de 1959, según enmendada,** y/o por el Título VII de la Ley Federal de Derechos Civiles de 1964, según enmendada, **no se ventilarán ante los árbitros del Negociado.** Las partes podrán tramitar estos casos siguiendo el procedimiento que a esos efectos apruebe el Secretario del Trabajo y Recursos Humanos **o ante los foros**

**administrativos o judiciales correspondientes**.
Reglamento, <u>supra</u>, Art. III(d) (*énfasis suplido*).
Entendemos que esta prohibición de arbitrar casos de discrimen fue incorporada al Convenio Colectivo y, por lo tanto, es ley entre las partes.

En <u>Vélez Miranda</u>, <u>supra</u>, nos enfrentamos a un caso similar al de autos. En esa ocasión, una empleada demandó a su patrono por hostigamiento sexual. El patrono argumentó que la disputa se debía referir a un árbitro de acuerdo a la cláusula de arbitraje presente en el convenio colectivo. Dicha cláusula establecía, de manera similar a la del caso de autos, que cualquier disputa se referiría a un árbitro del Negociado.

Sin embargo, a diferencia del caso de autos, en <u>Vélez Miranda</u>, <u>supra</u>, la demandante instó su acción bajo las protecciones de la Ley Núm. 17 del 22 de abril de 1988, 29 L.P.R.A. secs. 155, que prohíbe el hostigamiento sexual en el empleo. Las causas de acción traídas bajo dicha Ley no estaban explícitamente excluidas de la jurisdicción del Negociado por el Reglamento. Por esto, hicimos un análisis de la intención legislativa que dio fruto en la Ley Núm. 17. Concluimos que dicha intención fue "clara al establecer, que el empleado afectado por un acto de hostigamiento sexual no se vea obligado a acudir a ningún foro administrativo antes de recurrir al foro judicial; ni del Estado, ni del patrono, ni del que pudiera establecerse en virtud de convenio." <u>Vélez Miranda</u>, <u>supra</u>. Así pues, creamos una

excepción a nuestra política pública a favor del arbitraje por expreso mandato legislativo. [2] Id.

En esta ocasión, sin embargo, nos enfrentamos a una situación un tanto diferente. La demandante en el caso de autos alega que fue despedida por discrimen por razón de embarazo. El discrimen por razón de embarazo constituye una modalidad del discrimen por razón de género. Rivera Aguila v. K-Mart de Puerto Rico, 123 D.P.R. 599 (1989). Así pues, la demandante instó una acción bajo la Ley Núm. 100, supra, la cual prohíbe el discrimen por razón de género.

Como mencionáramos anteriormente, las acciones instadas bajo la Ley Núm. 100 están expresamente excluidas de la jurisdicción del Negociado por su propio Reglamento. Por lo tanto, resulta innecesario hacer un análisis del historial legislativo de la Ley Núm. 100, como tuviéramos que hacer en Vélez Miranda, supra, con la Ley Núm. 17. El Departamento del Trabajo y Recursos Humanos, a través del Reglamento del Negociado, el cual tiene fuerza de ley, ha expresado clara e inequívocamente su intención de excluir los casos traídos bajo la Ley Núm. 100 de los procedimientos de arbitraje del Negociado.

III

La peticionaria cita jurisprudencia federal a favor de una fuerte política pro-arbitraje. Dicha jurisprudencia surge bajo el Federal Arbitration Act (en adelante "FAA"). El FAA es un

---

[2] Nuestra decisión de excluir la Ley de Hostigamiento Sexual en el Empleo de la jurisdicción del Negociado fue ratificada por el Secretario del Trabajo y Recursos Humanos mediante enmienda al Reglamento del Negociado. El 23 de diciembre de 1999 se promulgó el Reglamento Número 6065 del Departamento del

estatuto federal que obliga a los tribunales a darle validez a una cláusula de arbitraje en un contrato. 9 U.S.C. sec. 2. Dicha legislación nace como respuesta a la antigua actitud hostil, heredada de la tradición anglosajona, que tenían algunos tribunales estadounidenses para con dichas cláusulas de arbitraje. Cicuit City Stores v. Adams, 532 U.S. 105 (2001). A través del FAA, el Congreso se aseguró que las cláusulas de arbitraje fueran evaluadas y validadas como cualquier otra cláusula contractual, teniendo en cuenta la autonomía contractual de las partes, e instituyendo así una vigorosa política pública nacional a favor del arbitraje. Id.

El FAA es aplicable, también, en los tribunales estatales. Southland Corp. v. Keating, 465 U.S. 1 (1984). Recientemente, el Tribunal Supremo de los Estados Unidos resolvió además que dicho estatuto cubre las cláusulas de arbitraje incluidas en los contratos de empleo, con ciertas limitadas excepciones que no son de aplicación al caso e autos. Circuit City, supra. Sin embargo, el FAA fue promulgado por el Congreso bajo la Cláusula de Comercio. Id. Como tal, sus disposiciones sólo se activan cuando las partes alegan y prueban que la transacción envuelta en la controversia formó parte del comercio interestatal. Paine Webber, supra.

En el caso de autos, la peticionaria no alegó ni probó que el contrato de empleo en controversia estuviera cubierto por el FAA por ser parte del comercio interestatal. Por tanto, no es

---

Trabajo y Recursos Humanos, para añadir a la lista de leyes excluidas de la jurisdicción del Negociado la Ley Núm. 17.

de aplicación dicho estatuto ni su jurisprudencia interpretativa.[3]


IV

En el caso de autos, la demandante instó una reclamación bajo la Ley Núm. 100 por alegadamente haber sido despedida por discrimen por razón de embarazo, un tipo de discrimen por razón de género. El Convenio Colectivo del cual ella formaba parte disponía que las reclamaciones que surgiesen de dicho Convenio se llevarían a arbitraje ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y de Recursos Humanos de Puerto Rico. El Reglamento de dicho Negociado claramente establece que las reclamaciones instadas bajo la Ley Núm. 100 no podrán ser ventiladas ante sus árbitros. Por lo tanto, la demandante no tenía que, ni podía, llevar su reclamación al foro arbitral, sino que podía y debía acudir directamente al foro judicial. Se confirma, pues, la sentencia del Tribunal de Circuito de Apelaciones.

**Se dictará la Sentencia correspondiente.**

---

[3] De todas maneras, cabe mencionar que el FAA requiere que los tribunales hagan valer las cláusulas de arbitraje **según sus propios términos**. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52 (1995); Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468 (1989); World Films, supra. Así pues, cuando un pacto de arbitraje establece que se seguirán los procedimientos de arbitraje dispuestos por ley estatal, el FAA exige que se sigan dichos procedimientos estatales, tal y como se pactó en el contrato. Id. Eso, precisamente, es lo que ocurre en el caso de autos. El Convenio Colectivo disponía que las reclamaciones se llevarían a arbitraje ante el Negociado. Como tal, aun si el FAA fuera aplicable al caso de autos, los procedimientos de arbitraje tendrían que ajustarse a lo establecido por las leyes y los reglamentos estatales relativos al arbitraje

Federico Hernández Denton
Juez Asociado

---

ante el Negociado.  La resolución del caso de autos, pues, sería igual aunque aplicara el FAA.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Magali Medina Betancourt,
et als.


    Demandantes-Recurridos

       vs.                     CC-2000-664  Certiorari

La Cruz Azul de P.R.


    Demandada-Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton



San Juan, Puerto Rico, a 30 de noviembre de 2001.


Por los fundamentos expuestos en la Opinión que antecede, cual se hace formar parte íntegra de la presente, se confirma sentencia del Tribunal de Circuito de Apelaciones y se devuelve caso al Tribunal de Primera Instancia para la continuación de procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secreta del Tribunal Supremo. El Juez Asociado señor Fuster Berling disiente sin opinión escrita.



Isabel Llompart Zeno
Secretaria del Tribunal Supremo