ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| LVR FOREVER LLC, CESAR EFRAIN SAINZ RODRÍGUEZ<br><br>APELANTES<br><br>V.<br><br>OPCIÓN 1 ENTERTAIMENT LLC, PLAN B INCORPORADO, OLGA TERESA TAÑON ORTIZ Y OTROS<br><br>APELADOS | KLAN202400504 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV08282<br><br>Sobre: Enriquecimiento injusto |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nosotros LVR Forever LLC (Forever LLC) y César Efraín Sainz Rodríguez (Sainz Rodríguez) (en conjunto apelantes) mediante el presente recurso de apelación y nos solicita que revoquemos la *Sentencia* emitida el 15 de febrero de 2024, notificada al siguiente día, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).

Adelantamos que se modifica la sentencia apelada, a los fines de **desestimar sin perjuicio** y, en aras de salvaguardar el derecho de **arbitraje**, así modificada se confirma.

**I**

El 29 de agosto de 2023, los apelantes presentaron una *Demanda* sobre incumplimiento de contrato, daños y perjuicios y enriquecimiento injusto contra Opción 1 Entertaiment, LLC. (Opción 1), Plan B Incorporado (Plan B), la Sra. Olga Teresa Tañón Ortiz (Olga Tañón), el Sr. William Denizard (Denizard) y la Sociedad Legal de Gananciales compuesta por

los últimos dos (en conjunto apelados).[1] En apretada síntesis, la apelante adujo que los apelados incumplieron con un contrato de servicio pactado entre estos, el 11 de julio de 2016, para la presentación de un concierto de la artista Olga Tañón, el cual se llevaría a cabo el 25 de febrero de 2017 en el Coliseo José Miguel Agrelot.

Además, en lo pertinente al caso ante nosotros, adujeron que el 22 de junio de 2018 los apelantes instaron una reclamación para arbitraje contra los apelados ante la *American Arbitration Association*, (AAA) en el Caso Núm. 01-18-002-4725, donde se le exigieron: los daños por el incumplimiento del contrato; que el 23 de octubre de 2018 los apelados radicaron una reconvención en el caso de arbitraje; y, que por información y creencia, la demanda y reconvención presentada ante la AAA fueron desestimadas sin perjuicio ya que ambas partes abandonaron el arbitraje. Asimismo, arguyeron que los apelados se rehusaron a pagar los gastos requeridos por la AAA mientras que eran ellos los únicos que pagaban las facturas de la AAA.

El 27 de octubre de 2023, los apelados presentaron su *Contestación a Demanda* mediante la cual negaron las alegaciones presentadas en su contra y levantaron sus defensas afirmativas.[2] En lo pertinente al caso, los apelados alegaron afirmativamente que el contrato suscrito entre las partes contenía una cláusula de arbitraje exclusivo y mandatario que privaba de jurisdicción sobre la materia al TPI, por lo cual la *Demanda* debía ser desestimada. Así, también, admitieron haber presentado reconvención ante la AAA en el caso de arbitraje contra la apelante.

Luego de varios trámites procesales, el TPI emitió una *Orden*[3] donde le concedió a la apelante hasta el 26 de diciembre de 2023 para que mostrara causa por la cual no debía declararse sin jurisdicción y desestimar

---

[1] Apéndice del recurso, Anejo 8, págs. 20-27.
[2] Entrada 16 del caso Núm. SJ2023CV08282 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Apéndice del recurso, Anejo 11, pág. 35. A su vez le concedió un término automático de veinte días a los apelados para presentar su contestación. Indicó, además, que no aceptaría réplicas ni dúplicas.

la causa de acción, al amparo de la sección 16.9 del contrato de servicios profesionales pactado entre las partes, la cual contenía una cláusula de arbitraje que disponía lo siguiente:

> 16.9 En caso de que surja cualquier disputa relativa a los términos del presente Acuerdo, está exclusivamente acordado que las mismas estarán sujetas a arbitraje de acuerdo con las reglas del American Arbitration Association ("AAA"). Las partes escogerán un (1) árbitro según los procedimientos de la AAA. El arbitraje se celebrará en Orlando, Florida, USA. El árbitro no tendrá el poder de conceder daños punitivos a las partes ni podrá emitir interdictos, u órdenes similares, para obligar a la Artista a presentarse artísticamente o de otra forma, ni podrá impedir que la ARTISTA se presente artísticamente o de otra forma, ya sea por su cuenta o a través de otros promotores o empresarios. La decisión del árbitro podrá ser presentada y puesta en vigor ante cualquier tribunal con jurisdicción sobre las partes o donde cualquiera de las partes tenga activos. En la eventualidad de que la disputa llegue a litigio o arbitraje la parte prevaleciente tendrá derecho al pago de costas, gastos y honorarios de abogado, incluyendo las costas de arbitraje.

Así las cosas, el 15 de diciembre de 2023, los apelantes presentaron su *Moción en Cumplimiento de Orden*. [4] De este modo, expresaron que el 25 de noviembre del 2019 la AAA envió una carta a las partes del caso de epígrafe donde les notificaba la falta de pago en el caso de arbitraje. Señaló, además, que la AAA les indicó que, si no realizaban el pago correspondiente, procederían a suspender el caso. Alegaron que las partes vienen obligadas a pagar la mitad del monto total para continuar con el proceso. Asimismo, mencionaron que el 3 de marzo de 2023, la AAA envió un último comunicado a las partes notificándoles que la deuda del caso de arbitraje sería transferida a una agencia de cobro. Por último, arguyeron que en vista de que las partes no terminaron el proceso de arbitraje al no cumplir con el pago de este, se vieron obligados a acudir ante el foro primario para que adjudicara la controversia. En consecuencia, apuntaron que los apelados habían renunciado al proceso de arbitraje.

Por su parte, los apelados presentaron su *Moción en Cumplimiento de Orden* a través de la cual manifestaron que la apelante no había logrado mostrar causa por la cual el pleito no debía ser desestimado.[5] En su

---

[4] Entrada 24 de SUMAC del caso Núm. SJ2023CV08282.
[5] Entrada 25 de SUMAC del caso Núm. SJ2023CV08282.

contestación arguyó lo siguiente: que nada de lo expresado en la moción de la apelante sobre las cartas de la AAA sostienen la postura de que haya actuado de forma inconsecuente o contradictoria con su reclamo; que cumplió con las normas del arbitraje que inició la apelante; que fue esta última quién no prosiguió los trámites; quién no pagó a la AAA; que fue solo a la parte apelante a quien la AAA le informó que su deuda sería referida a una agencia de cobro; y, que no había renunciado al cumplimiento del arbitraje pactado. Así pues, reiteró que era de aplicación la cláusula de arbitraje exclusivo y mandatorio.

El 16 de febrero de 2024, el TPI dictó una *Sentencia* mediante la cual resolvió que la apelante no lo había puesto en posición de determinar que los apelados habían renunciado al arbitraje pactado.[6] Por tal razón, el foro primario razonó que carecía de jurisdicción para atender la *Demanda* presentada en el caso de epígrafe y, en consecuencia, desestimó la misma con perjuicio.

Inconforme con lo resuelto por el foro primario, el apelante presentó el 4 de marzo de 2024 una *Solicitud de Determinaciones de Hechos Adicionales y Reconsideración de Sentencia Conforme la Regla 47 de Procedimiento Civil*.[7] Sin embargo, el TPI se sostuvo en su determinación original.

Aún inconforme, el apelante acude ante este Tribunal de Apelaciones y nos señala la comisión de los siguientes errores:

**Primer Error:** Erró el Honorable Tribunal de Primera Instancia al desestimar la *Demanda* por falta de jurisdicción cuando las partes habían renunciado [tácitamente] al arbitraje.

**Segundo Error:** Erró el Honorable Tribunal de Primera Instancia al denegar la [solicitud de] reconsideración y hechos adicionales luego de haber proh[i]bido las r[é]plicas y d[ú]plicas.

**Tercer Error:** Erró el Honorable Tribunal de Primera Instancia al desestimar la *Demanda* con perjuicio, cuando en todo caso debió emitir su decisión sin perjuicio.

---

[6] Apéndice del recurso, Anejo 9, págs. 28-33.
[7] Entrada 29 de SUMAC del caso Núm. SJ2023CV08282.

Contando con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A.**

La jurisdicción es la autoridad que ostenta un tribunal para decidir controversias. *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011). Así, la falta de jurisdicción de un tribunal incide directamente sobre su capacidad para adjudicar un caso. *Souffront v. A.A.A.*, 164 DPR 663, 674 (2005). Igualmente, la jurisdicción no se presume, por lo que antes de considerar un recurso, el tribunal tiene que determinar si tiene facultad para atender el mismo. *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007). Es decir, un tribunal necesita jurisdicción sobre las partes en el pleito y sobre la materia sobre la cual se centra la controversia. La defensa de falta de jurisdicción puede plantearse al momento de presentar la alegación responsiva. R. Hernández Colón, *Derecho Procesal Civil*, 6ta.ed., San Juan, LexisNexis, 2017, pág. 306.

La falta de jurisdicción sobre la materia y sobre la persona son fundamentos para desestimar la causa de acción. *Id.* Estas son necesarias para la debida adjudicación de un caso. *Shell v. Srio. Hacienda,* 187 DPR 109, 122 (2012). Por su parte, la falta de jurisdicción sobre la materia no es susceptible de ser subsanada y las partes no pueden voluntariamente otorgársela al tribunal. *Aguadilla Paint Center v. Esso* 183 DPR 901, 931 (2011).

Sin embargo, la falta de jurisdicción sobre la persona es una defensa afirmativa que se puede renunciar expresa o tácitamente. *Trans–Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689, 702 (2012). La jurisdicción sobre la persona "es el poder que tiene el tribunal para sujetar a una parte a su decisión." R. Hernández Colón, *Derecho Procesal Civil,* San Juan, LexisNexis, 2010, pág. 40. De no levantarse a tiempo, esta defensa afirmativa se entiende renunciada a menos que se evidencie que

no se omitió por falta de diligencia. *Presidential v. Transcaribe,* 186 DPR 263, 280 (2012).

Sabido es que los tribunales deben ser celosos guardianes de su jurisdicción a los fines de poder atender los recursos presentados ante sí. *Souffront v. A.A.A.*, *supra*, pág. 674. Por ello, los tribunales no pueden atribuirse jurisdicción si no la tienen, ni las partes en litigio se la pueden otorgar. *Maldonado v. Junta Planificación, supra*. La ausencia de jurisdicción es insubsanable. *Id.* Por lo cual, cuando un tribunal determina que no tiene la autoridad para atender un recurso, solo puede así declararlo y desestimar el caso. *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 355 (2003).

**B.**

El Artículo 1042 del Código Civil de 1930,[8] hoy derogado, atendía lo relativo a las fuentes de obligaciones. En lo pertinente, la citada disposición legal establecía que las obligaciones nacían –y nacen– "de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia." 31 LPRA sec. 2992.[9] Asimismo, el Artículo 1044 disponía que, "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes". 31 LPRA sec. 2994. En armonía con lo anterior, el principio de *pacta sunt servanda* establece la obligatoriedad del contrato según sus términos y las consecuencias necesarias derivadas de la buena fe. *BPPR v. Sucn. Talavera*, 174 DPR 686, 693 (2008).

Por otro lado, el Código Civil de 1930 disponía en su Artículo 1206, que "[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio." 31 LPRA sec. 3371. A su vez, un contrato se concretiza cuando concurren los siguientes requisitos: consentimiento de los contratantes; el

---

[8] El Código Civil de 1930 fue derogado por Ley Núm. 55 del 1 de junio de 2020, 31 LPRA sec. 5311 *et seq.*, vigente desde el 28 de noviembre de 2020. No obstante, a los hechos del presente caso le es aplicable el ordenamiento jurídico anterior. Véase, Artículo 1812 del Código Civil de 2020, 31 LPRA sec. 11717.

[9] Análogo al Artículo 1063 del Código Civil de 2020, 31 LPRA sec. 8984.

objeto cierto; y, la causa de la obligación. Artículo 1213 del Código Civil de 1930, 31 LPRA sec. 3391. En todo caso, "[l]os contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley." Artículo 1210 del Código Civil de 1930, 31 LPRA sec. 3375.

En nuestro ordenamiento jurídico rige el principio de la autonomía de la voluntad el cual le concede amplia libertad de acción a las partes que desean obligarse. *BPPR v. Sucn. Talavera*, *supra*, a la pág. 693. La aludida norma está recogida por el Artículo 1207 del Código Civil de 1930, el cual disponía de la siguiente forma: "Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público." 31 LLPRA sec. 3372; *Álvarez v. Rivera*, 165 DPR 1, 17 (2005), que cita a *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 724 (2001). Asimismo, siempre y cuando concurran las condiciones esenciales para su validez, los contratos podrán celebrarse de cualquier forma. Artículo 1230 del Código Civil de 1930, 31 LPRA sec. 3451; *Velco v. Industrial Serv. Apparel*, 143 DPR 243, 250 (1997).

Estas normas reconocen un doble postulado en la teoría general de los contratos. Por un lado, la libertad de contratación, y del otro, la total autonomía de la voluntad de los contratantes que han escogido obligarse mutuamente para determinar el contenido de dicha relación jurídica. Dicha autonomía está limitada únicamente por los parámetros que impongan la ley, la moral social y el orden público. De tal forma, una vez los contratantes eligen pactar entre sí, estos pueden establecer el contenido y alcance normativo de su relación jurídica, sin otra intromisión del Estado que la impuesta por los criterios antes mencionados. Por lo tanto, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante un contrato, cuando el mismo es legal y válido. Véase, *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999), que cita a *Cervecería*

*Corona v. Commonwealth Ins. Co.*, 115 DPR 345 (1984); *Olazábal v. U.S. Fidelity, etc.*, 103 DPR 448, 462 (1975).

**C.**

Nuestro ordenamiento jurídico permite que las partes contratantes se obliguen al arbitraje. *Municipio Mayagüez v. Lebrón*, 167 DPR 713 (2006); Ley Núm. 376 de 8 de mayo de 1951, conocida como *Ley de Arbitraje Comercial en Puerto Rico*, 32 LPRA sec. 3201 *et seq.* En Puerto Rico existe una fuerte política pública a favor del arbitraje como método alterno para la solución de conflictos. *Aponte Valentín et al. v. Pfizer Pharm*, 208 DPR 263, 282, (2021); *Medina v. Cruz Azul de P.R.*, 155 DPR 735, 738 (2001).  El interés del Estado por el arbitraje está motivado por la búsqueda de la solución de disputas de manera rápida, flexible y menos onerosa que los tribunales. *H.R., Inc. v. Vissepó & Diez Constr.*, 190 DPR 597, 608 (2014). Sin embargo, el arbitraje solo se utilizará si las partes así lo han pactado y en la forma como lo han pactado. *S.L.G. Méndez-Acevedo v. Nieves Rivera*, 179 DPR 359, 368 (2010). "Esto se debe a que como el arbitraje es una figura de naturaleza contractual, no se puede obligar a una parte a someter una disputa al procedimiento de arbitraje si esa parte no lo ha pactado de esa forma" *Id.*, pág. 368.

Una vez pactado el arbitraje, las partes vienen obligadas a cumplir con el mismo. De este modo, "los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento al arbitraje acordado." *PaineWebber Inc. v. Soc. de Gananciales.*, 151 DPR 307, 312, (2000). Es decir, ante un pacto de arbitraje, lo prudente es la abstención judicial. *Municipio Mayagüez v. Lebrón*, *supra*. En ese sentido, queda limitada la jurisdicción sobre la persona que poseen los tribunales. *H.R., Inc. v. Vissepó & Diez Constr.*, *supra*; Véase, además, nota al calce número 5 del caso *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991).

A pesar de la vigorosa política pública de no intervenir, existen limitadas excepciones al cumplimiento previo de la obligación de arbitrar como, por ejemplo, la renuncia voluntaria. *H.R., Inc. v. Vissepó & Diez*

*Constr.*, *supra*. **El peso de probar que se ha renunciado al arbitraje recae sobre la parte promovente.** *Id*. Asimismo, **toda duda que pueda existir al respecto debe ser resuelta a favor del arbitraje**. *S.L.G. Méndez-Acevedo v. Nieves Rivera, supra*.

Cuando el derecho al arbitraje se reclama en la primera alegación responsiva, "**lo que procede es detener los procedimientos ante el tribunal y someter el asunto a arbitraje.***"* (Énfasis nuestro) *H.R., Inc. v. Vissepó & Diez Constr., supra*, pág. 608. De otro lado, la parte que alega que se renunció al arbitraje **deberá probar que la parte demandada realizó actos afirmativos sin reclamar previamente su derecho a arbitraje**. *Id*. Es decir, "el simple acto de contestar la demanda sin mencionar el derecho a arbitraje no implica per se una renuncia a tal derecho." *Id*., pág. 613. No obstante, "la tarea de determinar si un demandado ha renunciado a su derecho al arbitraje no debe tomarse livianamente, sino que **este análisis debe realizarse a la luz de la fuerte política pública a favor del arbitraje**." (Énfasis nuestro.) *Id*., pág. 609.

Puesto que nuestra *Ley de Arbitraje Comercial en Puerto Rico*, Ley Núm. 376 de 8 de mayo de 1951, *supra*, sigue sustancialmente el modelo de la Ley Federal de Arbitraje, nuestro más Alto Foro ha señalado que la jurisprudencia interpretativa federal nos sirve de guía para resolver los casos en la jurisdicción local. *S.L.G. Méndez-Acevedo v. Nieves Rivera*, *supra*; Véase D. M. Hefeld, *La jurisprudencia creadora: factor determinante en el desarrollo de arbitraje en Puerto Rico*, 70 (Núm. 1) Rev. Jur. UPR 1 (2001).  De este modo, nuestro Tribunal Supremo ha señalado lo siguiente:

> En Estados Unidos, la determinación de arbitrabilidad de una controversia no está basada en un criterio rígido uniforme, sino que es tomada caso a caso, según la jurisdicción. Por ejemplo, algunas jurisdicciones atienden el asunto como si el arbitraje se tratara de una defensa afirmativa, a la que se renuncia si no se reclama en la primera alegación responsiva. Por otra parte, hay jurisdicciones que consideran que únicamente omitir tal reclamación en la contestación de la demanda no constituye una renuncia, aunque la participación activa del litigante en el tribunal sí se interprete como una renuncia al arbitraje.

Como ya hemos visto, podemos concluir que a nivel federal se aplica una gran variedad de factores para determinar cuándo la conducta exhibida por la parte demandada constituye una renuncia al proceso de arbitraje. Los factores comúnmente utilizados son: (1) si las partes han participado activamente en el litigio en corte; (2) si han realizado actos incompatibles con el proceso de arbitraje; (3) si el proceso de litigación ha sido sustancialmente iniciado; (4) si las partes se encuentran en una etapa avanzada en la preparación para el pleito justo cuando se reclama el arbitraje; (5) cuánto tiempo se han demorado las partes en solicitar que se detengan los procedimientos en el tribunal para hacer valer la cláusula de arbitraje; (6) el perjuicio causado a la parte contraria por la demora del demandado en reclamar el arbitraje; (7) si el demandado ha reclamado el arbitraje en su contestación a la demanda; (8) si el demandado ha presentado una reconvención contra el demandante; (9) si el demandado ha presentado una demanda contra tercero por el mismo asunto; (10) si el demandado se ha beneficiado del proceso en los tribunales, y (11) si el reclamante busca litigar nuevamente asuntos en los méritos del caso sobre los cuales el tribunal no le dio la razón. (Citas omitidas) *H.R., Inc. v. Vissepo & Diez Constr.*, 190 DPR 597, 609–610 (2014).

**D.**

La desestimación es el pronunciamiento judicial que resuelve un pleito de manera desfavorable para el demandante. Hernández Colón, *op. cit.*, 6ta. ed., pág. 411. Se trata de la sanción máxima en un pleito. *Id.*, pág. 250. No obstante, a pesar de que los tribunales están facultados para desestimar los pleitos con perjuicio en determinadas circunstancias, estos deben cumplir con la "**política pública judicial inclinada a favorecer que los casos se ventilen en los méritos y que se recurra a la desestimación de un pleito con perjuicio excepcionalmente**." (Énfasis nuestro) *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 264 (2021). Así pues, la desestimación tiene el efecto de adjudicar en los méritos el pleito, **salvo cuando se trate de falta de jurisdicción** o de parte indispensable. *Id.*, pág. 411; Regla 39 de Procedimiento Civil, 32 LPRA Ap. V, R. 39. Véase, además, *VS PR, LLC v. Drift-Wind, supra*.

**III**

En su recurso apelativo, la apelante nos presentó tres (3) señalamientos de error por parte del foro primario. En primer lugar, el apelante adujo que incidió el TPI "al desestimar la Demanda por falta de jurisdicción cuando las partes habían renunciado [tácitamente] al arbitraje."

Asimismo, señala como segundo error que el TPI erró "al denegar la [solicitud de] reconsideración y hechos adicionales luego de haber proh[i]bido las r[é]plicas y d[ú]plicas." Por último, plantea como tercer error que erró el TPI "al desestimar la *Demanda* con perjuicio, cuando en todo caso debió emitir su decisión sin perjuicio." Porque disponen del recurso ante nuestra consideración, solo discutiremos los errores primero y tercero.

Como reseñamos previamente, una vez pactado el arbitraje, las partes vienen obligadas a su cumplimiento. *PaineWebber Inc. v. Soc. de Gananciales*, *supra*. Así pues, ante un pacto de arbitraje, los tribunales deben abstenerse y cumplir con la política pública de no intervenir. *Municipio Mayagüez v. Lebrón*, *supra*. Asimismo, el arbitraje puede ser renunciado pero el peso de probar dicha renuncia recae sobre la parte demandante. *H.R., Inc. v. Vissepó & Diez Constr.*, *supra*.

Surge del caso ante nuestra consideración que los apelados hicieron valer inmediatamente la cláusula de arbitraje toda vez que levantaron su defensa afirmativa de falta de jurisdicción al momento de presentar su alegación responsiva. Además, se desprende del expediente que luego de presentada la alegación responsiva, los apelados solo presentaron el *Informe de Manejo de Caso*[10], es decir, esta no había iniciado sustancialmente el litigio del caso previo a que el TPI desestimara la causa de acción por falta de jurisdicción. No encontramos en el recurso apelativo, ni en el expediente digital de SUMAC, algún acto incompatible con el proceso de arbitraje. Esto es, no se ha presentado reconvención, demandas contra terceros y tampoco se ha iniciado el descubrimiento de prueba en el caso.

Incluso, se desprende del caso que no existe controversia sobre la existencia de una cláusula de arbitraje compulsoria pactada entre las partes en el contrato subscrito el 11 de julio de 2016. Tampoco existe controversia sobre el inicio del procedimiento de arbitraje ante la AAA al que se le asignó

---

[10] Entrada 21 de SUMAC del caso Núm. SJ2023CV08282.

el número 18-0002-4725, del cual el TPI tomó conocimiento judicial y fue alegado y admitido por las partes en la demanda y en la contestación a la demanda. Igualmente, no existe controversia en cuanto a que los apelados presentaron reconvención en el proceso ante la AAA.

No obstante, la única contención es a los efectos de que alegadamente la parte renuncio tácitamente al arbitraje por no pagar la deuda en la AAA y en consecuencia el caso fue suspendido. Sin embargo, la prueba aportada por la apelante, esto es, las cartas emitidas por la AAA, no nos ponen en posición de resolver que los apelados hayan renunciado tácitamente al arbitraje.

Por otro lado, como bien señalamos previamente, cuando se desestima una causa de acción por falta de jurisdicción, esta se desestimará sin perjuicio. Regla 39 de Procedimiento Civil, *supra*: *VS PR, LLC v. Drift-Wind*, *supra*. Por lo tanto, en el caso de epígrafe procedía que el TPI desestimara la causa de acción sin perjuicio.

En conclusión, resolvemos que la apelante no nos ha puesto en posición de resolver que los apelados hayan renunciado a su derecho de arbitraje. El TPI procedió de forma correcta al declararse sin jurisdicción para atender el caso de epígrafe. Lo aquí resuelto es cónsono con la política pública de que los tribunales no debemos intervenir ante la existencia de un arbitraje pactado entra las partes de un contrato. A su vez, resolvemos que la desestimación del caso es sin perjuicio.

**IV**

Por los fundamentos que anteceden, modificamos a los únicos efectos de que el dictamen apelado sea sin perjuicio y así modificado, confirmamos.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones